FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
7/22/2021 10:24 PM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

**FIRST JUDICIAL DISTRICT COURT**
**COUNTY OF SANTA FE**
**STATE OF NEW MEXICO**

**MAX ORTEGA III,**

    **Plaintiff,**

vs.                                                         Case No: D-101-CV-2020-01340

**WILLIAM EDGMAN,**
**LOUISE LOPEZ,**
**NEW MEXICO CORRECTIONS**
**DEPARTMENT, and DOES (1-50),**

    **Defendants.**

## FIRST AMENDED COMPLAINT

Plaintiff Max Ortega III ("Plaintiff") brings this Complaint against Defendants William D. Edgman ("Edgman"), Louise Lopez ("Lopez"), the New Mexico Corrections Department ("NMCD"), and Does 1-50 ("Doe Defendants") (collectively, "Defendants"), and through undersigned counsel alleges upon personal knowledge as to Plaintiff's own actions, and upon information and belief and counsel's investigations as to all other matters, as follows:

### NATURE OF ACTION

1. This action arises because Defendants subjected Plaintiff, a pre-trial detainee, to almost a year of the punishment of solitary confinement without lawful authority to do so, in violation of New Mexico and federal law.

2. On October 29, 2018, while awaiting trial on a criminal charge in state district court in Raton, New Mexico, Plaintiff was placed in NMCD custody on a "safekeeping" order. New Mexico law requires NMCD to house any pre-trail detainee remanded to its custody for safekeeping. NM Stat. § 33-3-15. Plaintiff was transferred from county jail to NMCD custody based on a state district court judge's discretionary finding that "the public welfare or the safe

custody of a prisoner" justified issuance of a safekeeping order. *Id*. Neither the order nor Section 33-3-15 make any mention of solitary confinement.

3. Pursuant to NMCD's written policy, Plaintiff could not be placed in solitary confinement for longer than 30 days. He also had to be moved out of solitary confinement as soon as possible. Moreover, the same policy required a review to take place within 7 days of Plaintiff's placement in solitary confinement and vested Plaintiff with a right to review after 30 days.

4. Nonetheless, once Plaintiff arrived at the Central New Mexico Correctional Facility ("CNMCF") in Los Lunas, New Mexico in late 2018, he was immediately placed in solitary confinement and remained there until October or November of 2019 without any hearing, written explanation, or opportunity to challenge his conditions of confinement.

5. In an October 18, 2019 Santa Fe New Mexican article documenting NMCD's misuse of solitary confinement, an NMCD spokesman admitted the department had no legitimate justification for its treatment of Plaintiff, and that NMCD was "working to get him out of solitary."

6. Defendant's treatment of Plaintiff was inconsistent with the United States Constitution and the New Mexico Constitution.

**PARTIES**

7. Plaintiff Max Ortega III is and at all relevant times was a citizen of New Mexico. For approximately a year starting in December 2018, Plaintiff was housed in solitary confinement at CNMCF while awaiting trial. While at CNMCF Plaintiff was confined alone in his cell for at least 23 hours a day. He was cut off from the prison's general population and normal human contact.

8. Defendant William D. Edgman ("Edgman") is CNMCF's Interim Warden. On information and belief, he is a citizen of New Mexico. Edgman has oversight and managerial responsibility for CNMCF. His actions or omissions caused Plaintiff to be placed in and remain in solitary confinement. He is sued in his personal and official capacities.

9. Defendant Louise Lopez ("Lopez") is employed by NMCD. He manages the Restrictive Housing Unit where Plaintiff was held. On information and belief, he is a citizen of

New Mexico. Lopez had oversight and managerial responsibility for the restrictive housing unit for CNMCF. His actions or omissions caused Plaintiff to be placed in and remain in solitary confinement. He is sued in his personal and official capacities.

10. Defendant New Mexico Department of Corrections is a public entity. Its office is located in Santa Fe County, New Mexico.

11. Plaintiff does not know the true names and capacities of all the individuals who have played a part in causing Plaintiff to suffer harm from his extended stay in solitary confinement. The defendants sued herein as Does 1 through 50 are therefore sued by fictitious names. Plaintiff is informed and believes and based on such information and belief alleges that each of the Doe Defendants are current or former NMCD employees, prison guards, contractors, or affiliates who, under color of law, acted or failed to act in such ways as to make them legally responsible for the misconduct alleged in this complaint. Plaintiff will amend this complaint to set forth the true names and capacities of the Doe Defendants when the same are ascertained.

12. The prison guard defendants held Plaintiff in custody held him in solitary confinement and refused to provide Plaintiff with any means of modifying or challenging his conditions of confinement. The prison guard defendants are employed by NMCD, maintain order, and hold persons including Plaintiff in custody

## JURISDICTION

13. Jurisdiction is proper in New Mexico as all or substantially all facts giving rise to Plaintiff's claims occurred in New Mexico and all parties reside in New Mexico.

14. Jurisdiction is further proper because, through this action, Plaintiff seeks to vindicate his rights under New Mexico law in New Mexico State Court.

15. Venue is proper in this Court pursuant to NMSA 1978 § 41-4-18 and NMSA 1978 § 38-3-1.

16. A Notice of Tort Claim was timely provided by Plaintiff pursuant to the New Mexico Tort Claims Act.

## ALLEGATIONS

17. Solitary confinement—also known, among other names, as "restricted housing" and "administrative segregation"—refers to the practice of segregating an inmate from a prison or jail's general population and requiring the inmate to stay in a cell for at least 23 hours a day.

18. NMCD has come under heavy criticism in recent years for its use of solitary confinement. A study by the American Civil Liberties Union of New Mexico ("ACLU") found that New Mexico prisoners placed in solitary confinement exhibited high rates of loneliness, depression, anxiety, and other serious symptoms. *See* American Civil Liberties Union of New Mexico, *Solitary Confinement in New Mexico, a Review of Policies, Practices, & Inmate Experiences in Isolation*, February 2019, at 57.

19. The ACLU study also found that prisoners experienced substantial difficulties reintegrating into the prison's general population after release from solitary confinement. *Id*. at 57-58. Over the last several years, multiple New Mexico inmates have committed suicide while in solitary confinement. *Id*. at 8, fn. 8 (collecting news articles).

20. In 2019 New Mexico enacted the Restricted Housing Act, NM Stat. § 33-16-1 *et seq*. Among other things, the Restricted Housing Act requires NMCD to produce quarterly reports identifying all inmates placed in solitary confinement and NMCD's reason for the inmate's placement. NM Stat. § 33-16-5.

21. NMCD purports to limit use of solitary confinement to "those circumstances that pose a direct threat to the safety of persons or a clear threat to the safe and secure operations of the facility." *See* New Mexico Corrections Department Policy CD-41500, 8-23-19 revision, at 3.

22. Prisoners placed in solitary confinement due to disciplinary infractions may only be placed there for "short periods of time," and even then only "after a finding of a rule violation at an impartial hearing and when there is not an adequate alternative disposition to regulate the inmate's behavior." *Id*. at 2.

23. According to NMCD's "sanctions chart," crimes such as rape, murder, and kidnapping, when committed while in NMCD custody, are punishable by no more than 30 days in solitary confinement. *See* NMCD Policy CD-090101.C.

24. NMCD supposedly guarantees that segregated inmates will have "a status review completed by the classification committee or other authorized staff every seven days for the first 60 days and at least every 30 days thereafter." *Id*. at 9. Moreover, inmates who spend more than seven days in solitary confinement are promised periodic hearings to "determine whether the reasons for the placement still exist." *Id*. And echoing the ACLU's concerns about the negative mental health effects of solitary confinement, NMCD "attempt[s] to ensure offenders are not released directly into the community" from solitary confinement. *Id*.

25. There is, however, one category of inmates that NMCD deems unworthy of any protections: pretrial detainees in NMCD custody pursuant to safekeeping orders. NMCD effectively sentences inmates who are merely *accused* of crimes to indefinite solitary confinement with no review, no consideration of alternatives, and no legitimate penological justification.

26. The conditions of confinement experienced by pretrial detainees—namely, 22 hours a day in a small cell and little to no normal human contact—are substantially worse than those experienced by the general prison population in the same facilities.

27. In short, pretrial detainees are forced to await their day in court in conditions that, according to NMCD's own written policies, would not be inflicted on even the most dangerous and unruly convict. Accordingly, NMCD's treatment of pretrial detainees is perverse, arbitrary, and amounts to punishing inmates for being accused of crimes.

28. In October of 2018, Plaintiff was at the Colfax County Detention Center in Raton, New Mexico. Plaintiff way awaiting trial in a felony case. While in custody, the District Attorney motioned the district court to review Plaintiff's conditions of release because Plaintiff was charged with a new crime.

29. On October 29, 2018, and without holding a hearing, the district court judge entered an order pursuant to NM Stat. § 33-3-15, New Mexico's safekeeping statute, that transferred Plaintiff to NMCD custody to await trial.

30. Upon arrival at CNMCF in Los Lunas, New Mexico in December 2018, Plaintiff was immediately placed in solitary confinement. He remained there for nearly a year. He was never provided an opportunity to be heard or any written explanation for his placement.

31. At the time he arrived in CNMCF, NMCD's written policies mandated that he could not be held in solitary confinement for more than 30 days. *See* NMCD Policy CD-141500, 10/5/17 revision. Defendants were also required to provide Plaintiff with a review 72 hours after placement in solitary confinement, as well as seven-day and 30-day reviews. *Id*. Defendants did not provide Plaintiff with any of the reviews required by the October 5, 2017 revision of NMCD Policy CD-141500.

32. On August 23, 2019 Defendants updated NMCD Policy CD-141500, apparently to comply with the Restrictive Housing Act. The August 23, 2019 revision stated that "Placement of an inmate in Restrictive Housing shall be limited to those circumstances that pose a threat to the safety of persons or a clear threat to the safe and secure operations of the facility." *See* NMCD Policy CD-141500, 8/23/19 revision, at 3. The revised policy also mandated that inmates held in solitary confinement on pending transfer to another facility will be removed from solitary confinement soon as possible. Additionally, the revised policy guaranteed that sanitary items such as toilet paper would be provided to inmates in solitary confinement, and reaffirmed that inmates must receive reviews every 30 days to determine whether the conditions necessitating solitary confinement still exist.

33. Despite the revision to NMCD Policy CD-141500, Plaintiff's confinement conditions were never reviewed by a classification committee, no effort was made to determine whether Plaintiff posed a threat to anyone, and Plaintiff was not provided with basic sanitary items.

34. Plaintiff was never accused of any disciplinary violation by NMCD and was never accused of committing a crime while in NMCD custody.

35. On or about August 23, 2019, NMCD released the first quarterly report required by New Mexico's Restricted Housing Act. *See* NM Stat. § 33-3-15. The report listed the names of all inmates held in solitary confinement during the preceding three months, as well as NMCD's

purported justification for the inmate's placement. The report identified five possible reasons why an inmate could be placed in solitary confinement:

- "1=Inmate threatens the secure and orderly management of the Institution and/or is a threat to others or a danger to themselves"
- "2=Inmate is pending transfer to another facility"
- "3=Inmate is under investigation for [Predatory Behavior Management Program] eligibility"
- "4=Pre Hearing Detention"
- "5=Disciplinary Restrictive Housing"

36. Inmates placed in solitary confinement for more than one of the above grounds had multiple numbers corresponding to their entries in the report. For example, an inmate who was considered a threat to other inmates and was awaiting transfer to another facility would have "1,2" listed in the report's "Reason for Placement" column.

37. According to the report, NMCD placed Plaintiff in solitary confinement solely for reason "2," i.e. "inmate is pending transfer to another facility."

38. NMCD Policy DC-141500 states unconditionally that "Inmates placed in Restrictive Housing in Pending Transfer Hold status will be moved as soon as possible".

39. There are heightened requirements to hold inmates with mental illness in solitary confinement.

40. On October 18, 2019, the Santa Fe New Mexican published an article examining the NMCD report. *See* Phaedra Haywood, *Report examines solitary confinement in New Mexico*, Santa Fe New Mexican (Oct. 17, 2019). The article specifically discussed Plaintiff, and included the following statement from NMCD's spokesperson, Eric Harrison: "In this situation we don't have control over [Plaintiff's] trial date and the inmate does not have control over his trial date so that is the unfortunate situation there[.] … It was 'hopefully the trial is soon, the trial is soon,' but at certain [sic] point, 10 months later, trial clearly is not soon. It's time to do something." NMCD's

spokesperson further claimed that Gay had seen the report and was "working to get [Plaintiff] out of solitary," but "there are a lot of moving parts."

41. From December 2018 to late October 2019, Plaintiff was confined to his cell for 23 hours a day during the week, and 24-hour continual lockdown on weekends.

42. On weekdays from December 2018 to late October 2019, Plaintiff was permitted one hour of "rec time" outside of his cell, but without meaningful human contact. He was permitted to use up to fifteen minutes of that time to shower.

43. On weekends from December 2018 to late October 2019, Plaintiff was not permitted to leave his cell or shower.

44. Starting in late October 2019, Plaintiff's "rec time" was increased to two hours each day because, according to a NMCD guard, Plaintiff had been in solitary a long time and had been "good."

45. When in his cell, the only furniture available to Plaintiff was a small stool, desk, and hard bed with a thin mattress. The furniture in Plaintiff's cell, combined with the extended periods of forced inactivity, caused him to experience severe back pain.

46. Defendants routinely failed to provide for Plaintiff's basic personal hygiene needs. For example, Plaintiff was only provided with toilet paper once a week, which resulted in Plaintiff frequently running out and having to beg the guards for more. At one point, Plaintiff was denied toilet paper for an entire day. Additionally, Defendants did not clean his cell, which constantly smelled of nervous sweat.

47. During his time in solitary confinement, Plaintiff developed a severe rash for which Defendants refused to provide effective medical treatment. Instead, Defendants only provided Plaintiff with a couple tubes of hydrocortisone cream which did nothing to ameliorate the condition.

48. Plaintiff also developed high blood pressure during his time in solitary confinement. On information and belief, the increase in Plaintiff's blood pressure was proximately caused by the conditions of his confinement.

49. During August or September of 2019 Plaintiff, who is diabetic, was given the wrong diabetes medication. As a result, Plaintiff experienced a severe reaction and believed he was going to fall into a diabetic coma and die. Plaintiff was given the wrong medication because Defendant failed to exercise reasonable care and because, on information and belief, the medical services available to solitary confinement inmates are worse than those provided to the prison population generally. When Plaintiff informed a nurse that he was given the wrong medication, the nurse warned him to "be careful who he accused."

50. Plaintiff is mentally ill and takes anti-psychotic medication to treat his condition. Defendants were aware of Plaintiff's mental illness, as NMCD staff delivered his medication to him. Plaintiff's prolonged solitary confinement exacerbated his mental illness. While in solitary confinement, Plaintiff experienced symptoms including hallucinations, extreme anxiety, and severe depression. Plaintiff was also not able to sleep and was plagued by agonizing loneliness.

51. Due to a defective sink and toilet in the same pod as Plaintiff's cell, he could hear water running constantly, including at nights. He was also regularly subjected to the sounds of other inmates screaming and gunshots from the firing range near his cell. These sounds interfered with Plaintiff's sleep and caused him mental distress.

52. Plaintiff's solitary confinement was indefinite. When asked when he would be released from restrictive housing, the guards would not tell him.

53. Plaintiff was also denied contact with his family. He was constantly gripped with a fear that he will not see his four children and seven grandchildren again.

54. During the course of Plaintiff's solitary, Lopez interacted with him on a regular basis. Lopez personally acknowledged to Plaintiff that Plaintiff was not being treated fairly and that he would work on "getting him out." Lopez upon information and belief was aware of NMCD policy requiring

55. On information and belief, Lopez's job duties included acting a jailor for all pretrial detainees placed in NMCD's custody. These duties included but were not limited to maintaining public order and holding persons accused of a criminal offense in custody. Lopez's job duties also

9

include making rounds in the administrative housing unit, speaking with inmates, and personally participating in the day to day operation of the prison's restrictive housing unit.

56. NMCD Policy CD-083100 states that Unit Managers are responsible for Inmate Management and obligates Unit Managers like Lopez to "Conduct interviews with all inmants who are placed in the unit." The policy also specifically obligatesUnit Managers like Lopez to "Conduct interviews with all inmates who are placed in Restrictive Housing, Pre-Hearing Detention or Disciplinary Segregation".

57. Lopez had actual knowledge that Plaintiff was in solitary confinement for an exceptionally long time and a longer period of time than NMCD policy permitted. While he made vague statements to Plaintiff that Plaintiff had been in for a long time and that he would work to get Plaintiff out he never arranged for a review and never did get the Plaintiff out of solitary confinement. Plaintiff was only moved from solitary after his story appeared in the Santa Fe New Mexican.

58. Lopez was deliberately indifferent to Plaintiff remaining in solitary confinement indefinitely.

59. While being held in solitary confinement, and prior to filing suit against Defendants, Plaintiff sought redress through NMCD's administrative grievance process. In addition to complaining about his treatment to numerous NMCD employees, Plaintiff repeatedly asked guards to bring him a grievance form so that her could initiate NMCD's official grievance process. However, the guards refused to provide Plaintiff with the form, thus denying him access to NMCD's grievance process. Accordingly, NMCD's grievance process with either completed by, exhausted by, or unavailable to, Plaintiff.

60. The Defendants actions violate NMCD's stated policy that under no circumstances shall an inmate be denied the right to file an informal complaint or grievance.

61. Upon arrival to prison the grievance process was never explained to Plaintiff and he was not provided with a written copy of the policy.

62. NMCD's grievance policy, CD-150500, states that the grievance policy does not apply to any matter involving a classification decision. The policy notes that a separate appeal process is provided by the Department policy for classification actions or placement in Special Management.

63. NMCD Policy CD-143500 states with regard to county jail inmates who are placed in NMCD Custody by safekeeping order that, "The institution receiving the inmate for safekeeping will segregate the inmate from the general population and place the inmate in Restrictive Housing status". This policy further states that the county jail inmates will abide by the policies and procedures of the receiving institution or those governing Restrictive Housing inmates, NMCD Policy CD-141500.

64. NMCD Policy CD-141500 does not provide any means for an inmate to request that they be removed from restrictive housing or otherwise participate in any kind of grievance process. The policy does obligate NMCD personnel to conduct periodic reviews to determine if continued use of solitary confinement is warranted under NMCD Policy – the stated criteria for admission in the first place is according to policy "limited to those circumstances that pose a direct threat to the safety of persons or a clear threat to the safe and secure operations of the facility".

65. The combined operation of these policies created a circumstance where even if Plaintiff had been given access to the prison's grievance system he could not have actually engaged in the grievance system because inmate classification is not subject to the grievance policy and he was placed in solitary confinement per NMCD classification policy which was applicable to all county jail inmates.

## FIRST CAUSE OF ACTION

**Intentional Deprivation of Rights Guaranteed by the New Mexico Constitution; against all Defendants**

66. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth herein.

67. The October 5, 2017, and August 23, 2019 revisions to NMCD Policy CD-141500 were regulations adopted pursuant to NMSA 1978 § 33-1-6, and accordingly vested Plaintiff with "rights, privileges or immunities secured by the …. laws … of New Mexico[.]" NMSA 1978 § 41-4-12.

68. Defendants treatment of Plaintiff was wholly inconsistent with both versions of NMCD Policy CD-141500.

69. Plaintiff had a right not to be placed in solitary confinement without notice, a hearing, and opportunity to be heard. Plaintiff also has a liberty interest in not being kept in solitary confinement for an indefinite period, and without regular reviews.

70. NMCD Policy CD-141500 limits official discretion in placing an inmate in restrictive housing in the first place and limits official discretion in keeping inmates in restrictive housing past deadlines that are clearly stated in the policy. For instance, NMCD Policy CD-141500 limits officials' discretion to hold inmates in solitary confinement past thirty (30) days. Even an inmate who murders another inmate can only be punished with up to thirty (30) days in restrictive housing pursuant to NMCD Policy CD-090101.C. and NMCD Policy CD-141500.

71. Mr. Ortega's indefinite placement in solitary confinement imposed an atypical and significant hardship upon him.

72. The Tort Claims Act waives immunity for law enforcement officers whose actions violate a person's rights under the New Mexican Constitution. *See* NMSA 1978 § 41-4-12. Prison employees who hold persons accused of a crime in custody are law enforcement officers for purposes of NMSA 1978 § 41-4-12.

73. Article II Section 13 of The New Mexico Constitution guarantees New Mexicans freedom from cruel and unusual punishment.

74. Article II Section 18 of the New Mexico Constitution guarantees the right to due process and equal protection of the law to all New Mexico citizens.

75. Plaintiff, a pretrial detainee, was placed in prolonged solitary confinement for nearly a year.

76. Plaintiff was deprived of a liberty interest without due process of law under the New Mexican Constitution.

77. Moreover, NMCD's treatment of Plaintiff served no legitimate penological purpose and amounted to punishment.

78. Even if the New Mexico Constitution allowed NMCD to inflict punishment on Plaintiff prior to conviction, the duration and conditions of Plaintiff's confinement were cruel and unusual.

79. Defendants' treatment of Plaintiff violated the Equal Protection Clause of the New Mexican Constitution. Plaintiff was afforded less rights and less due process than even convicted felons who committed horrific crimes while serving sentences. There was no rational basis and no legitimate penological interest that justified Defendants' treatment of Plaintiff.

80. The October 5, 2017, and August 23, 2019 revisions to NMCD Policy CD-141500 granted Plaintiff a right to, among other things, regular review of his confinement conditions, an opportunity to be heard, and a right to be removed from solitary confinement after at most 30 days. Defendants deprived Plaintiff these rights without due process of law.

81. New Mexico law affords Plaintiff greater protections under the New Mexican Constitution than the corresponding clauses in the Constitution of the United States.

82. Defendants' actions were willful, wanton, and in gross and reckless disregard of Plaintiff's rights.

83. Furthermore, Defendants' wanton indifference to Plaintiff's medical conditions also constituted cruel and unusual punishment under the New Mexican Constitution.

84. As a result of Defendants' actions, Plaintiff suffered injuries including but not limited to personal injury, emotional distress, mental anguish and pain and suffering.

## SECOND CAUSE OF ACTION

**Negligent Deprivation of Rights Guaranteed by the New Mexico Constitution; against all Defendants**

85. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth herein.

86. Defendants owed a legal duty under New Mexico state law to provide Plaintiff with adequate confinement conditions.

87. The October 5, 2017, and August 23, 2019 revisions to NMCD Policy CD-141500 were regulations adopted pursuant to NMSA 1978 § 33-1-6. These regulations (1) prescribe certain actions or define a standard of conduct, either explicitly or implicitly; (2) were violated by Defendants; (3) were meant to protect a class of persons that included Plaintiff; (3) the harm caused to Plaintiff, i.e. prolonged, arbitrary placement in solitary confinement, is of the kind the regulations sought to prevent. Moreover, pursuant to NM Stat. § 33-3-15 Defendants were legally required to provide Plaintiff with a "place of safety," which they failed to do.

88. Defendants' actions amounted to negligence per se.

89. Even if Defendants were not per se negligent, they failed to exercise reasonable and ordinary care to protect Plaintiff's life and health.

90. Defendants Edgman and Lopez each negligently supervised personnel which was a proximate cause in Plaintiff's indefinite stay in solitary confinement.

91. Defendants actions and omissions proximately caused Plaintiff to be deprived of rights afforded him by the New Mexico Constitution including his right to procedural due process, his liberty interest created by NMDOC policy, right to be free from cruel and unusual punishment, equal protection under the law. Defendants actions and omissions also proximately caused Plaintiff to suffer false imprisonment.

92. As a result of Defendants' actions, Plaintiff suffered injuries including but not limited to personal injury, emotional distress, mental anguish and pain and suffering.

## THIRD CAUSE OF ACTION

### False Imprisonment under the Tort Claims Act; against all Defendants

93. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth herein.

94. Plaintiff was placed in prolonged solitary confinement in violation of his rights under the New Mexico Constitution.

95. Defendants' decision to place Plaintiff in prolonged solitary confinement was not justified or privileged under state law and therefore constituted false imprisonment.

96. NMCD is responsible for Lopez and Edgman's actions under the doctrine of respondeat superior.

97. Defendants' actions were willful, wanton, and in gross and reckless disregard of Plaintiff's rights.

98. As a result of Defendants' actions, Plaintiff suffered injuries including but not limited to personal injury, emotional distress, mental anguish and pain and suffering.

## FOURTH CAUSE OF ACTION

**Negligent Maintenance of a Building under the Torts Claims Act; against all Defendants**

99. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth herein.

100. Defendants are statutorily required to create and administer a pretrial detention facility for all inmates placed in their custody on safekeeping orders.

101. Defendants' creation, administration, and maintenance of that facility was negligent, insofar as Defendants simple repurposed a solitary confinement unit suited for temporarily punishing unruly of or dangerous convicts.

102. As a result, all pretrial detainees committed to Defendants' custody suffered the harms attendant with solitary confinement.

103. Defendants new that they were entrusted with the detention of pretrial detainees, and that many such detainees suffer from mental illness.

104. By subjecting Plaintiff to a long period of solitary confinement Defendants breached their duty to house Plaintiff in a reasonably prudent manner.

105. As a result of Defendants' actions, Plaintiff suffered injuries including but not limited to personal injury, emotional distress, mental anguish, and pain and suffering.

## FIFTH CAUSE OF ACTION

**42 U.S.C. § 1983 – Violation of the Fourteenth and Eighth Amendments; against Edgman, Lopez, and Doe Defendants**

106. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth herein.

107. Plaintiff is a United States citizen and Edgman, Lopez, and Doe Defendants are persons for purposes of 42 U.S.C. § 1983.

108. At all relevant times, Plaintiff had a clearly established right under the Fourteenth Amendment of the United States Constitution to not be placed in indefinite solitary confinement without meaningful periodic reviews.

109. Defendants violated this right by not conducting period reviews, much less reviews based on facts particular to Plaintiff, as required by law.

110. At all relevant times, Edgman, Lopez, and Doe Defendants acted under color of law, and the actions and omissions complained of here were within the scope of their official duties and employment.

111. Plaintiff further had a right under the Fourteenth Amendment as a pretrial detainee to not be subjected to punishment by Edgman, Lopez, and Doe Defendants.

112. Defendants violated this right by, with intent or deliberate indifference, subjecting Plaintiff to nearly a year of solitary confinement.

113. Plaintiff also had a right under the Eighth Amendment of be free from cruel and unusual punishment.

114. Defendant violated this right by subjecting Plaintiff to nearly a year in administrative segregation.

115. NMCD policy and custom was a moving force in causing injury to Plaintiff. But for the policy to place all county jail inmates in restrictive housing Plaintiff would have never been in solitary confinement. NMCD policy indicates that the restrictive housing policy applies to county jail inmates yet the Defendants each deliberately ignored policy and knowingly left Plaintiff

in solitary confinement for an indefinite period of time. They did not follow policy to provide him with reviews and made no effort to move him out of restrictive housing. Upon information and belief Defendants and NMCD treat all county jail inmates in this fashion and do not follow to hold reviews or transfer county jail inmates out of restrictive housing.

116. Defendants' punishment of Plaintiff was cruel, degrading, inhuman, and completely arbitrary and unnecessary.

117. As a proximate result of Defendants' actions, Plaintiff suffered injuries including but not limited to personal injury, emotional distress, mental anguish, and pain and suffering.

## JURY DEMAND

118. Plaintiff demands a jury trial on all issues so triable.

## REQUEST FOR RELIEF

Wherefore, Plaintiff requests prays for the following relief:

1. Award compensatory damages in an amount to be determined at trial.
2. Award punitive damages in an amount to be determined at trial.
3. Award Plaintiff his reasonable attorney fees and costs.
4. Grant such other relief as the Court deems just and proper.

Respectfully submitted

*/s/ Todd J. Bullion*
Todd J. Bullion
Law Office of Todd J. Bullion
300 Central Ave SW
Suite #1000E
(505) 452-7674
todd@bullionlaw.com

---and---

**GUBERNICK LAW P.L.L.C**

*/s/ Benjamin Gubernick*
BENJAMIN GUBERNICK
Ben@gubernicklaw.com

734-678-5169
10720 W. Indian School Rd.
Ste. 19 PMB 12
Phoenix, AZ 85037