IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MAX ORTEGA III,**

      **Plaintiff,**

vs.                                                  **Case No: 1:21-cv-00728 RB-JHR**

**JOHN GAY, WILLIAM EDGMAN,
JERRY ROARK, LUIS LOPEZ,
NEW MEXICO CORRECTIONS
DEPARTMENT, and DOES (1-50),**

      **Defendants.**

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMLAINT**

Plaintiff Max Ortega IIII ("Plaintiff"), through undersigned counsel, hereby responds to Defendant Luis Lopez ("Lopez") and the New Mexico Corrections Department's ("NMCD") (collectively, "Defendants") motion to dismiss (Dkt. No. 2). As explained below, the motion lacks merit and warrants denial.

### I.    INTRODUCTION

The Supreme Court long ago recognized that "even for prisoners sentenced to death, solitary confinement bears 'a further terror and peculiar mark of infamy.'" *Davis v. Ayala*, 576 U.S. 257, 287 (2015) (Kennedy, J. concurring) (citing *In re Medley*, 134 U.S. 160, 170 (1890)). And subsequent research has confirmed what the Supreme Court "suggested over a century ago: Years on end of near-total isolation exact a terrible price." *Id*. Thus, "[e]ven if the law were to condone or permit this added punishment, so stark an outcome ought not to be the result of society's simple *unawareness or indifference*." *Id*. (emphasis added).

The harms attendant with solitary confinement result whether or not the jailor intends to punish. Thus, the Supreme Court held in 1983 that even if imposed for a nonpunitive reason, "administrative segregation may not be used as a pretext for indefinite confinement of an inmate."

*Hewitt v. Helms*, 459 U.S. 460, 477 n. 9 (1983). Instead, its use should be limited to inmates who pose a security risk, and even then "[p]rison officials must engage in some sort of periodic review of the confinement of such inmates." *Id*. Further, "whether a prisoner remains a security risk" must be "based on facts relating to a *particular* prisoner." *Id*. (emphasis added). The requirement for particularized review was reiterated by the Tenth Circuit almost a decade ago, when it held that, as a matter of clearly established law, "the review must be meaningful; it cannot be a sham or a pretext." *Toevs v. Reid*, 685 F.3d 903, 912 (10th Cir. 2012).

This case arises because Defendants' treatment of Plaintiff fell far short of basic constitutional minimums. As alleged in Plaintiff's First Amended Complaint (Dkt. No. 1-3, the "FAC"), Plaintiff was subjected to prolonged solitary confinement, with no review whatsoever, solely because he was a pretrial detainee. He was only moved out of solitary confinement—after nearly a year—when the *Santa Fe New Mexican* ran a front-page story about his plight. In that story, a spokesman for NMCD even admitted that Plaintiff should not have been in solitary confinement.

But now, even in the face of binding, on-point precedent and indefensible conduct, Defendants demand that the Court dismiss Plaintiff's Section 1983 claim with prejudice. Defendants' motion does not even try to distinguish this matter from *Hewitt* or *Toevs*—indeed, it makes no mention of those cases at all. Instead, Defendants offer little beyond the circular assertion that prison policies that they created "required" them to violate Plaintiff's constitutional rights. Def. Mot. at 18.

The basis for Defendants' request for dismissal of Plaintiff's state law claims is equally illusory. As explained below, the state court's order (entered shortly before Defendants removed this action) is squarely contradicted by binding authority that, like *Hewitt* or *Toevs*, Defendants fail to cite.

Accordingly, Defendants' motion should be denied.

## II.     FACTUAL BACKGROUND

On October 29, 2018, a district court judge signed a safekeeping order that transferred Plaintiff, a pretrial detainee at the Colfax County Detention Center, to NMCD's custody. FAC at ¶¶ 28-29. The order simply stated that "the public welfare or the safe custody of a prisoner" justified issuance of a safekeeping order. FAC at ¶ 2. The order was silent on conditions of confinement. *Id*. Although NMCD runs various prisons in New Mexico, New Mexico law also requires NMCD to operate and maintain a pretrial detention facility for safekeeping order inmates. NMSA 1978 § 33-3-15 ("Whenever the public welfare or the safe custody of a prisoner shall require, any district judge in the state of New Mexico … may order any person charged with the commission of a crime … to be removed to … the state penitentiary[.]").

Plaintiff arrived at the Central New Mexico Correctional Facility ("CNMCF") in December of 2018 and was immediately placed in solitary confinement in the facility's Restrictive Housing Unit ("RHU"), where he remained for nearly a year. *Id*. at ¶ 30. The RHU was managed by Lopez. *Id*. at ¶ 9. NMCD funneled all safekeeping order inmates to its RHU to languish away in solitary confinement until their cases were resolved. *Id*. at ¶ 25. Accordingly, Lopez was the jailor for all pretrial inmates in NMCD's custody. *Id*. at ¶ 55.

Lopez's job functions included monitoring and interviewing all RHU inmates, including Plaintiff. *Id*. at ¶ 56. However, Lopez never arranged for a review of Plaintiff's status, and never moved him out of solitary confinement. *Id*. at ¶ 56. Rather, Lopez simply made vague statements to Plaintiff acknowledging that he had been in solitary confinement for an extremely long time, and that he might try and get him out. *Id*. at ¶ 57.

While in CNMCF custody Plaintiff was guarded by numerous John Doe guards. *Id*. at ¶ 11. Plaintiff was never provided with any opportunity to challenge his confinement and was never deemed a security risk. *Id*. at ¶¶ 30-34. According to a report NMCD submitted to the legislature on August 23, 2019, its sole reason for holding Plaintiff in solitary confinement was his "pending transfer to another facility" status. *Id*. at ¶¶ 35-37. In an October 18, 2019 article in the Santa Fe

New Mexican, a spokesperson for NMCD was quoted as saying the situation was "unfortunate" and that NMCD was "working to get [Plaintiff] out of solitary." *Id*. at ¶ 40.

While in solitary confinement, Plaintiff was subjected to 23 hours of total isolation each weekday in a small cell, and 24-hour lockdown on the weekends. *Id*. at ¶¶ 40-43. Starting in October of 2019, Plaintiff's "rec time" was increased to two hours each day because, according to a guard, he had been "good." *Id*. at ¶ 44.

The conditions of Plaintiff's confinement resulted in severe medical problems, including the exacerbation of preexisting mental health issues. *Id*. at ¶¶ 47-51.

### III.   LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[M]ore than labels and conclusions, and a formulaic recitation of the element of a cause of action" are required, but detailed factual allegations are not. *Id*. The Rule 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik v. United Airlines*, 671 F.3d 1188, 1192 (10th Cir. 2012). The Court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Moreover, granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

### IV.   ARGUMENT

**A. Defendants' "Law of the Case" Arguments Lack Merit.**

Defendants first contend that, as to Plaintiffs' state law claims, the state trial court's earlier ruling on a Rule 12(b)(6) motion is controlling under the law of the case doctrine. Def. Mot. at 5. Not so. Rather, Only "'final judgments may qualify as law of the case.'" *Caldwell v. Univ. of New Mexico Bd. of Regents*, 2020 WL 7861330 (D.N.M. Dec. 31, 2020) (citing *Poche v. Joubran*, 389 F. App'x at 774 (quoting *Unioil, Inc. v. Elledge,* 962 F.2d 988, 993 (10th Cir. 1992). It is wholly

inapplicable where "a ruling remains subject to reconsideration." *Wallace v. United States*, 372 F. App'x 826, 828 (10th Cir. 2010). Indeed, the Tenth Circuit encourages "courts to depart from erroneous prior rulings, as the underlying policy of the rule is one of efficiency, not restraint of judicial power.'" *Been v. O.K. Indus., Inc*., 495 F.3d 1217, 1225 (10th Cir. 2007) (internal citation omitted) (citing *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 823 (10th Cir. 2007)).

As explained below, the state trial court's ruling was contrary to New Mexico statutes and binding precedent. Propagating the state court's errors will serve no purpose; to the contrary, it will lead to inefficiency and avoidable appellate litigation. Moreover, the trial court granted leave to amend—as the order relied on by Defendants was not a final judgment, the law of the case doctrine has no application here. Finally, at the time Defendants removed this case, the state court's ruling was still subject to a motion for reconsideration.

In summary, Defendants claim that the law of the case doctrine somehow ties this Court's hands is contrary to settled law. It should be rejected.

### B. Defendants NMTCA Arguments Fail.

Defendants next contend that the New Mexico Tort Claims Act grants them immunity from Plaintiff's state law claims. Defendants' arguments are unavailing.

### 1. Lopez and the John Doe Guards are Law Enforcement Officers Under the Applicable Version of Section 41-4-12.

The State of New Mexico has expressly waived sovereign immunity for law enforcement officers who commit false imprisonment or violate rights afforded by the New Mexico Constitution. The version of Section 41-2-12 in effect at the time of this action's filing states:

> For purposes of this section, "law enforcement officer" means a public officer vested by law with the power to maintain order, to make arrests for crime ***or to detain persons suspected of committing a crime***, whether that duty extends to all crimes or is limited to specific crimes.

NMSA 1978, § 41-4-12 (Eff. May 20, 2020 to Sept. 20, 2020) (emphasis added).

Moreover, "if a public employee meets an exception to immunity, then the particular entity that supervises the employee can be named as a defendant in an action under the Tort Claims Act."

5

*Abalos v. Bernalillo Cty. Dist. Atty's Off.*, 1987-NMCA-026, ¶ 23, 105 N.M. 554, 559. *See also, id*. at ¶ 22 (municipality properly named as defendant where it was "the particular entity that operates the detention center" where a tort occurred). Finally, the supervising entity can be named as a defendant even if the identity of the public employee who committed a tort is unknown. *Id*. at ¶ 24 (city properly named as defendant where complaint alleged tortious conduct by John Doe jailors).

Here, Lopez, NMCD, and the John Doe defendants named in Plaintiff's Complaint are all, plainly, law enforcement officials. NMSA 1978 § 33-3-15 required NMCD to house any pretrial detainee placed in its custody on a safe keeping order, a responsibility NMCD assigned to CNMCF. CNMCF, in turn, decided to use its solitary confinement wing as a jail, managed by Lopez and staffed by John Doe guards. Accordingly, all Defendants were "vested by law with the power to … to detain persons suspected of committing a crime[.]" NMSA 1978, § 41-4-12 (Eff. May 20, 2020).[1]

Defendants attempt to avoid this obvious result by relying on a repealed version of the NMTCA. Specifically, Defendants point to NMSA 1978, § 41-4-3(D), which they claim requires the court to examine public employees' "principal duties" to determine whether they are law enforcement officers.

But in 2020 the legislature enacted a clarification to the NMTCA to that superseded the "principal duties" test. Senate Bill 5 was titled, in relevant part, "AN ACT … CLARIFYING DUTIES OF A LAW ENFORCEMENT OFFICER IN THE TORT CLAIMS ACT," and amended NMSA 1978, § 41-4-12 as follows:

---

[1] On September 20, 2020, the NMTCA was further amended to expand the definition to include officials who "detain persons suspected of *or convicted* of committing a crime[.]" NMSA 1978, § 41-4-12 (Eff. Sept. 20, 2020) (emphasis added). Although not necessary to dispose of Defendants' motion, Plaintiff notes that the expanded definition clearly encompasses Lopez and NMCD and cautions against the restrictive interpretation urged by Defendants. *See, e.g., Golden Services Home Health & Hospice v. Taxation & Revenu`e Dep't*, 2020 WL 2045956, at *7 (N.M. Ct. App. Apr. 20, 2020) ("While neither dispositive here nor retroactively applicable to prior transactions, the recent amendment clarifies current legislative intent in a manner that supports our analysis and conclusion herein.").

| Repealed Version (relied on by Defendants) | May 20, 2020 amended version |
|---|---|
| The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.<br><br>NMSA 1978, § 41-4-12 (effective to May 19, 2020). | The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, failure to comply with duties established pursuant to statute or law or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties. ***For purposes of this section, "law enforcement officer" means a public officer vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of committing a crime, whether that duty extends to all crimes or is limited to specific crimes***.<br><br>NMSA 1978, § 41-4-12 (Eff. May 20, 2020 to Sept. 20, 2020) (emphasis added). |

By its plain language, the May 20, 2020 amendment's definition supersedes the one found in NMSA 1978, § 41-4-3(D). And as a clarification of existing law, the May 20, 2020 amendment applied retroactively. *See, e.g., Swink v. Fingado,* 1993-NMSC-013, ¶ 35, 115 N.M. 275, 284) ("a statute which clarifies existing law may properly be regarded as having retroactive effect."); *Wood v. State of New Mexico Educ. Ret. Bd*., 2011-NMCA-020, ¶ 25, 149 N.M. 455, 460 ("This Court has explained that a clarification occurs when, rather than amending an existing law to provide a change, a statutory provision is amended to clarify what was previously implicit in the law.").

As alleged in the FAC, Lopez (and the John Doe guards) were vested by law with the power to detain persons suspected of committing a crime. Indeed, that is precisely what they did to

7

Plaintiff and all other pretrial detainees placed in NMCD's custody pursuant to safekeeping orders. That is sufficient to defeat Defendant's motion.

### 2. Defendants are Law Enforcement Officers Even under the Repealed Version of Section 41-4-12.

Even if the "principal duties" test applies—and as just explained, it does not—Defendants' motion would still fail. It is well-established that jailors are law enforcement officers because their "principal duties also include holding accused persons in custody." *Methola v. Eddy County*, 1980-NMSC-145, ¶ 17, 95 N.M. 329, 332. Likewise, a person who "manages jails … [is] a law enforcement officer while acting in that capacity." *Abalos v. Bernalillo County Dist. Atty's Office*, 1987-NMCA-026, ¶ 28, 105 N.M. 554, 560. *See also*, *id*. at ¶ 28 ("we hold as a matter of law that the director's duties are principally to hold in custody persons accused of a criminal offense.").

Defendants nonetheless contend that Lopez is not a law enforcement officer because "his duties are primarily administrative in nature[.]" Def. Mot. at 11. But the principal case relied on by Defendants for this argument, *Anchondo v. Corr. Dept*., 1983-NMSC-051, ¶ 10, 100 N.M. 108, is unhelpful. In *Anchondo*, the New Mexico Supreme Court held that the Secretary of Corrections and the Warden of the State Penitentiary were not law enforcement officers under NMSA 1978, § 41-4-3(D) because the duties assigned to the Secretary and Warden ***by statute*** were administrative *See*, *e.g.*, *id*. at ¶ 6 (listing numerous statutes that "specifically refer to the Warden and his duties" and holding that "[i]t is evident from these statutory provisions that the Warden's primary duties and responsibilities … are administrative in nature."). Unlike in *Anchondo*, Defendants fail to cite any statutes that refer to Lopez's job or its duties.

As alleged, Lopez manages the wing of CNMCF where all pretrial detainees are held. That is sufficient to state a claim even under the erroneous "law enforcement officer" definition espoused by Defendants. *See, e.g., Methola*, 1980-NMSC-145 at ¶ 17 (an official who "manages jails … [is] a law enforcement officer while acting in that capacity"); *Abalos*, 1987-NMCA-026 at ¶ 28 ("we hold as a matter of law that [a detention center's] director's duties are principally to hold in custody persons accused of a criminal offense."). Defendants' Motion should be denied.

### 3. Even if Lopez is not a Law Enforcement Officer, Defendants' Motion Still Fails as to NMCD.

Finally, even if Lopez does not satisfy the definition of law enforcement officer, Defendants' request for dismissal of Plaintiff's claims against NMCD would still warrant denial. That is because, as already discussed, NMCD is the proper named defendant where the John Doe guards breached a duty owed to Plaintiff. *Abalos*, 1987-NMCA-026 at ¶ 24. The FAC alleges that multiple as-yet unidentified NMCD employees were responsible for the harms caused to Plaintiff. *See, e.g.*, FAC at ¶ 11. As Defendants' motion does not even request dismissal of Plaintiff's claims against the John Doe defendants, the relief request by NMCD here is simply unavailable.

## C. Defendants' Negligence Per Se Arguments Lack Merit.

Defendants claim that Count 2 of the FAC is "based solely on negligence per-se," Def. Mot. at 13, and thus must be dismissed under *Davis v. New Mexico Dep't of Game & Fish*, 2019 WL 943514, D.N.M. Feb. 26, 2019). Defendants' argument mistakes the cart for the horse.

As *Davis* itself explains, "Section 41-4-12 immunity is not waived in an action for negligence *standing alone*," a suit for negligence per se standing alone is barred *a fortiori*. 2019 WL 943514 at *9. But Plaintiff's Section 41-4-12 cause of action is not based on negligence standing alone, but rather Defendants' violations of his constitutional rights. Immunity is expressly waived for such violations in *all three* versions of Section 41-4-12. *See, e.g.,* NMSA 1978 § 41-4-12 (waiving immunity for "deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties."). Moreover, it is well established that in lawsuits "against law enforcement officers pursuant to Section 41–4–12 the established law of negligence and damages applies to all claims and defenses." *Runge v. Fox*, 1990-NMCA-086, ¶ 5, 110 N.M. 447, 449. That includes the doctrine of negligence per se. *Id*. at ¶ 10.

## D. The NMTCA's Public Buildings Waiver Applies to this Matter.

The NMTCA waives immunity for the "negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building[.]" NMSA 1978, § 41-4-6(A). And the waiver applies whenever "negligent 'operation or maintenance' … create[s] a dangerous condition that threatens the general public or a class of users of the building." *Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 8, 140 N.M. 205, 207, as revised (Sept. 12, 2006).

Here, NMCD funneled all pretrial detainees placed in his custody on safekeeping orders to CNMCF's RHU. Accordingly, *all* pretrial detainees were exposed to the dangers associated with solitary confinement. As Defendants' negligent conduct was directed to a segment of the CNMCF's users, as opposed to only Plaintiff, the NMTCA's immunity waiver applies. *Cf. Lessen v. City of Albuquerque*, 2008-NMCA-085, ¶ 25, 144 N.M. 314, 319 ("Clearly, Decedent encountered danger when he wandered away from MDC and civilization and declined to seek assistance for himself. But there is nothing in the record suggesting that this was a danger to which all released inmates were exposed.").

Defendants rely on language in *Archibeque v. Moya*, 1993-NMSC-079, ¶ 8, 116 N.M. 616, 619 ("[NMSA 1978, §] 41–4–6, does not include the security, custody, and classification of inmates."). However, Defendants' interpretation of *Archibeque* is incorrect. In *Callaway v. New Mexico Dept. of Corr.*, 1994-NMCA-049, 117 N.M. 637, the Court of Appeals permitted a suit against NMCD by an inmate to go forward under NMSA 1978, § 41-4-6(A). The *Callaway* court reasoned that immunity was waived because NMCD's negligent misclassification of inmates "created a dangerous condition on the premises" that threatened more inmates than just the named plaintiff. *Id.* at ¶ 19. This reasoning was mirrored by the Supreme Court in *Archibeque*, which noted that "[w]hile a segment of the population at risk might justify a waiver of immunity under Section 41–4–6, a situation in which a single inmate is put at risk is not comparable." 116 N.M. at 621 n. 3.

New Mexico law required Defendants to provide a "place of safety" for *all* pretrial detainees placed in its custody pursuant to safekeeping orders. NMSA 1978 § 33-3-15. For every

member of this vulnerable class of CNMCF's users, Defendants' conduct fell far short. The Motion warrants denial.

### E. Plaintiff has Adequately Pled a Section 1983 Claim.

#### 1. Plaintiff's Conditions of Confinement were Plainly Unconstitutional.

"[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically." *Kingsley v. Hendrickson*, 576 U.S. 389, 400, 135 S. Ct. 2466, 2475, 192 L. Ed. 2d 416 (2015) (quotations omitted). However, an express intent to punish is not required for a court to find a constitutional violation. Rather, in determining whether pretrial conditions violated the Fourteenth Amendment's due process clause, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Where "a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment[.]" *Id.* at 539. The Supreme Court has specifically recognized that:

> [C]onfining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment.

*Id*. at 1875–76. In-line with that concern, the Tenth Circuit and Supreme Court recognize that indefinite placement in solitary confinement without meaningful periodic review violates clearly established law and is unconstitutional. *Toevs*, 685 F.3d 903 at 912 (citing *Hewitt*, 459 U.S. at 477)("Since *Hewitt,* it has been clearly established that prisoners cannot be placed indefinitely in administrative segregation without receiving meaningful periodic reviews").

Detainees can only be subjected to prolonged administrative segregation if there exist facts sufficient facts related to the "particular prisoner" to warrant segregation. *Id. See also*, *Romero v. Bd. of Cty. Commissioners for the Cty. of Curry*, 202 F. Supp. 3d 1223, 1257 (D.N.M. 2016) (procedural due process violation adequately pled where the plaintiff "was not given any initial classification review, or any subsequent reviews" prior to and during his placement in solitary confinement).

Here, the quarterly report NMCD provided to the New Mexico legislature provided exactly one reason why Plaintiff had been subjected nearly a year of solitary confinement: Plaintiff was "pending transfer to another facility." FAC at ¶ 37. That was in stark contrast to other administrative segregation inmates, who were identified as "threaten[ing] the secure and orderly management of the Institution[.]" *Id*. at ¶ 35. Moreover, Lopez and other NMCD employees wholly failed to perform *any* review of Plaintiff's confinement conditions, much less one particularized to his circumstances. *Id*. at ¶ 57. Moreover, when Plaintiff complained about his mistreatment he was threatened with further abuse. *Id*. at ¶ 49 (quoting a NMCD employee who warned him to "be careful who he accused" after he was provided with the wrong medication). And further dispelling any possibility that Plaintiff's treatment was somehow tailored to a legitimate penological purpose, his "rec time" was increased by an extra hour a day because he had been "good." *Id*. at ¶ 44. Finally, and most telling, a NMCD spokesperson was quoted in the newspaper admitting that, after 10 months, a "point" had been reached where it was time to move Plaintiff out of solitary confinement. *Id*. at ¶ 40.

In short, Defendants' treatment of Plaintiff was an appalling violation of clearly established law. Notably, it would have been a constitutional violation for Defendants to subject a dangerous, convicted criminal to such confinement conditions. *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (mandating procedural protections for convicts placed in solitary segregation). The Court should deny Defendants' motion.

**2.  The Excuses Offered by Defendants are Unavailing.**

Defendants offer a litany of unpersuasive excuses for their unconstitutional treatment of Plaintiff.

*First*, Defendants argue that Lopez did not have an "express intention to punish Plaintiff." Def. Mot. at 20. But as discussed above, whether confinement conditions *amount* to punishment can be inferred—no confession is required. *Bell*, 441 U.S. at 535. *See also*, *Romero*, 202 F. Supp. 3d at 1259 ("even if there is no overt intent to punish, a procedural due process violation can still

arise if the conditions are excessive in relation to the alternative purpose assigned and they amount to punishment." (Quotations omitted)).

*Second*, Defendants assert that they subjected Plaintiff to nearly a year of solitary confinement to serve a "legitimate government purpose." Def. Mot. at 20. The purposes identified by Defendants are NMCD's "need to manage its facilities" and "security reasons." Def. Mot. at 20. However, nebulous facility management needs are inadequate under *Toevs*. *See* 685 F.3d at 912. And the second purported reason was entirely absent from the report NMCD sent to the New Mexico legislature—security *was not* listed as one of the reasons Plaintiff was being held in solitary confinement, only that he was awaiting transfer to another facility. FAC at ¶¶ 35-37.

*Third*, Defendants suggest that they were entitled to place Plaintiff in solitary confinement because "a district court ha[d] already determined that safekeeping [was] necessary for the public welfare." *Id*. But that argument finds no support in NMSA 1978, § 33-3-15, the statute that authorizes safekeeping, or the safekeeping order issued for Plaintiff. As alleged in the FAC, the order merely stated that it was justified to ensure "the public welfare or the safe custody of a prisoner[.]" FAC ¶ 2. It, like the statute, made no mention of confinement conditions whatsoever. *Id*. Nowhere does the FAC make mention of any factual findings made by the judge—or anyone else—that would provide Defendants with a basis to assume Plaintiff was a security risk. Indeed, as Defendants' motion acknowledges, their decision to place Plaintiff in solitary confinement was based on exactly one factor: his status as a pretrial detainee. *See* Def. Mot. at 20 (claiming that NMCD's policies "require … officials to place county pretrial detainee, housed by NMCD pursuant to a safekeeping order, in RHU.")

*Fourth*, Defendants may not hide behind their policies to excuse their actions. If anything, the policies cited by Defendants show that NMCD violated the due process rights of *all* pretrial detainees placed in its custody. And in any event, as the Supreme Court has stated, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves. *Wilkinson*, 545 U.S. at 223.

13

***Fifth***, Defendants claim that the FAC does not "demonstrat[e] that Defendant Lopez was even responsible for placing Plaintiff in RHU or had the ability to remove him from the same or provide him with the process Plaintiff desired." Def. Mot. at 20. But the FAC alleges that Lopez: (1) ran the RHU; (2) was responsible for managing its inmates; (3) had regular contact with Plaintiff; and (4) had authority to "arrange[] for a review" of Plaintiff's confinement conditions; and (5) was deliberately indifferent. FAC at ¶¶ 57-58. As any reasonable officer in Lopez's positions would know that Plaintiff was entitled to regular, meaningful review of his placement in administrative segregation, the FAC contains sufficient allegations to state a claim against Lopez. *See Toevs*, 685 F.3d 903 at 912.

***Sixth and finally***, Defendants contend generally that the deprivation of Plaintiff's constitutional rights and resulting injuries were not "sufficiently serious" to support a Section 1983 claim. Def. Mot. at 23. Although somewhat unclear, Defendants' argument appears to be that Lopez was unaware that Plaintiff's conditions of confinement were causing him harm. But that is squarely contradicted by the FAC, which alleges that Lopez had first-hand knowledge that Plaintiff had been in solitary confinement for an "exceptionally long time and a longer period of time than NMCD policy permitted," FAC at ¶ 57, yet refused to have his status reviewed. The harms attendant to prolonged solitary confinement are well-documented and would be known to any reasonable public official running a detention center's administrative segregation unit. This Court may, and should, conclude that Lopez knew of a substantial risk of harm "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. at 842, 114 S.Ct. 1970.

**F. Defendants' Discussion of the Equal Protection Clause is Irrelevant.**

Defendants put forward a lengthy, wholly academic discussion of the Equal Protection Clause. See Def. Mot. at 23-24. Yet no claim in the FAC is premised on a violation of the Equal Protection Clause. Accordingly, that portion of the motion seeks rulings on issues not before the Court and should be disregarded.

### G. Plaintiff's False Imprisonment Claim is Adequately Pled.

Lastly, Defendants challenge Plaintiff's false imprisonment claim on the grounds that Plaintiff "does not allege that his confinement and restraint was unlawful in general." Def. Mot. at 25. But Plaintiff is not challenging his confinement at NMCD generally. Rather, the FAC alleges that Defendants had no lawful authority to confine Plaintiff in indefinite solitary confinement lasting nearly a year without due process of law. Indeed, that lack of legal authority has been clearly established for decades.

### H. Request for Leave to Amend.

If Defendants' motion is granted in any respect, Plaintiff respectfully requests leave to file a Second Amended Complaint.

## V. CONCLUSION

Defendants' Motion should be denied, but if it is granted Plaintiff should be permitted leave to amend.

Respectfully submitted,
**GUBERNICK LAW P.L.L.C**

/s/ Benjamin Gubernick
BENJAMIN GUBERNICK
New Mexico Bar No. 145006
Ben@gubernicklaw.com
734-678-5169
10720 W. Indian School Rd.
Ste. 19 PMB 12
Phoenix, AZ 85037

---and---

**The Law Office of Todd J. Bullion**

Todd J. Bullion
Bar Number: 146672
300 Central Ave SW
Suite #1000E
Albuquerque, NM 87102
(505) 452-7674
todd@bullionlaw.com

15

*Attorneys for Plaintiff.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20rd day of September, 2021, I filed the foregoing electronically through the Court's CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Mariposa Padilla Sivage
Noe Astorgal Corral
MPS@sutinfirm.com
JLR@sutinfirm.com

*Attorneys Defendants*

*/s/ Todd J. Bullion*
Todd J. Bullion