IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MAX ORTEGA III,

      **Plaintiff,**

v.

      No. CIV 21-0728 RB/JHR

WILLIAM EDGMAN, LOUISE LOPEZ,
NEW MEXICO CORRECTIONS DEPARTMENT,
and DOES (1–50),

      **Defendants.**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO "DEFENDANT LUIS LOPEZ'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR STAY AND MEMORANDUM IN SUPPORT THEREOF ON THE BASIS OF QUALIFIED IMMUNITY"**

Plaintiff Max Ortega III, by and through his attorneys of record, Gubernick Law, P.L.L.C. (Benjamin Gubernick), and the Law Office of Todd J. Bullion (Todd Bullion), submit the instant response in opposition to "Defendant Luis Lopez's Motion for Summary Judgment and Request for Stay and Memorandum in Support Thereof on the Basis of Qualified Immunity" ("Motion for Summary Judgment") (Doc 21).

**INTRODUCTION**

Plaintiff files a Motion to Strike concurrently with the instant response. Should the Court deny Plaintiff's Motion to Strike, Plaintiff responds to the Motion for Summary Judgment in the alternative. (Doc 21).

Viewing the facts in the light most favorable to Plaintiff, Luiz Lopez ("Defendant") is not entitled to qualified immunity. Defendant subjected Plaintiff, a pretrial detainee, to almost a year of punishment by incarcerating him in solitary confinement in the Restricted Housing Unit ("RHU" or "restricted housing") at Central New Mexico Correctional Facility ("CNMCF") for no penological purpose. At the time Plaintiff was detained in RHU, the law was clearly established

1

that any punishment of a pretrial detainee violates his constitutional right under the due process clause of the Fourteenth Amendment. That right was violated when Defendant, RHU unit manager at CNMCF, incarcerated Plaintiff in solitary confinement as a pretrial detainee for almost a year. Defendant told Plaintiff that he was being treated unfairly and would work to get Plaintiff out of RHU. However, it was only after Plaintiff's egregious treatment was published in a news article that Plaintiff's conditions of confinement improved. Drawing all reasonable inferences in Plaintiff's favor, as the Court must at this stage, Plaintiff's placement in solitary confinement was arbitrary, purposeless, and amounted to punishment in violation of his constitutional right. Defendant's Motion for Summary Judgment should be denied.

Additionally, on March 16, 2022, this Court issued a "Memorandum Opinion and Order" ("Court's Order"). (Doc. 10). The Court's Order was issued in response to a motion to dismiss filed by the above-captioned Defendants. (Doc. 2). The Court's Order acknowledged that Plaintiff "plausibly alleged a procedural due process claim under 42 U.S.C. § 1983" against Defendant and the Doe defendants. (Doc. 10 at 21). The Court denied Defendant's motion to dismiss on this claim. (Doc. 10 at 5, 9, 21).

Defendant's Motion for Summary Judgment fails to address publication of the news article and the changes in Plaintiff's confinement conditions—facts this Court previously found to be central to Plaintiff's claim. (Doc. 10 at 9). These additional facts as discussed below, and Plaintiff's exhibits, establish that there are significant genuine disputes as to material facts. Summary judgment should be denied.

## STANDARD OF REVIEW

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Mitchell v. Zia Park, LLC*, 842 F. Supp. 2d 1316, 1327 (D.N.M. 2012). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (citation omitted).

"When a § 1983 defendant raises the defense of qualified immunity on summary judgment, the burden shifts to the plaintiff to show that 1) the official violated a constitutional or statutory right; and 2) the constitutional or statutory right was clearly established when the alleged violation occurred." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1311–12 (10th Cir. 2002) (quotation marks and citations omitted). "A right is 'clearly established' when it was 'sufficiently clear that every reasonable official employee would have understood that what he is doing violates that right.'" *Parsons v. Velasquez*, 551 F. Supp. 3d 1085, 1146 (D.N.M. 2021) (citation omitted). A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for cases with precisely the same facts." *Id.* (citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

"If the plaintiff indeed demonstrates that the official violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant, who must prove that no genuine issues of material fact exist and that the defendant is entitled to judgment as a matter of law. In the end, therefore, the defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense. When the record shows an unresolved dispute of historical fact relevant to this immunity analysis,

3

a motion for summary judgment based on qualified immunity should be properly denied." *Layton Hills Mall*, 312 F.3d at 1312 (quotation marks and citations omitted).

## UNDISPUTED MATERIAL FACTS

### I. Plaintiff's Response to Defendant's "Statement of Undisputed Material Facts"

Plaintiff reserves all prior objections to Defendant's exhibits and "Statement of Undisputed Material Facts" ("UMF") as stated in the Motion to Strike filed concurrently with this response. Plaintiff also reserves all objections, including trial objections, and responds to the UMF for purposes of this response only:

1. Plaintiff does not dispute UMF #1.

2. Plaintiff does not dispute UMF #2. The relevance and materiality of UMF #2 is discussed in the Argument section of this response. *See* Argument *infra* Part I.C.

3. Plaintiff does not dispute UMF #3. The relevance and materiality of UMF #3 is discussed in the Argument section of this response. *See* Argument *infra* Part I.C.

4. Plaintiff does not dispute UMF #4. The relevance and materiality of UMF #4 is discussed in the Argument section of this response. *See* Argument *infra* Part I.C.

5. Plaintiff does not dispute UMF #5.

6. Plaintiff does not dispute UMF #6.

7. Plaintiff does not dispute UMF #7.

8. Plaintiff does not dispute UMF #8.

9. Plaintiff does not dispute UMF #9.

10. Plaintiff does not dispute UMF #10.

11. Plaintiff disputes UMF #11. NMCD does not provide housing for pretrial detainees pursuant to CD-143500. Rather, New Mexico state law mandates that NMCD accept

> [A]ny person charged with the commission of a crime, or any person in the custody of the sheriff of any county in the district of the said judge, to be removed to… the state penitentiary…when, in the opinion of the said district judge, it is advisable that such person or persons shall be removed for any purpose whatsoever.

N.M. Stat. Ann. § 33-3-15. Safekeeping Policy (CD-143500)[1] states that its authority is from "Section 33-3-15, as amended" and "Policy CD-01011." (Doc. 21, Ex. E (CD-143500 Authority.A-B.)). Policy CD-01011 is not otherwise referenced by Defendant and is not included as an exhibit to Defendant's motion. NMCD set forth procedures in the Safekeeping Policy (CD-143501) that "should be used in receiving and managing county jail inmates transported to a New Mexico Corrections Department (NMCD) institution for the purpose of safekeeping." (Doc. 21, Ex. E (CD-143501 Procedure)).

From the available documents, it is New Mexico state law that requires that NMCD accept pretrial detainees, not the Safekeeping Policy (CD-143501). Thus, in accordance with NMSA 1978, Section 33-3-15, NMCD articulates the guidelines used in receiving and managing county jail inmates transported to NMCD for safekeeping.

12. Plaintiff does not dispute UMF #12.

13. Plaintiff does not dispute UMF #13.

14. Plaintiff disputes UMF #14. Defendant states that NMCD receives inmates for safekeeping if the district judge determines placement is necessary for public welfare. Defendant fails to account for New Mexico state law. Per NMSA 1978, Section 33-3-15, "whenever the public welfare or the safe custody of a prisoner shall require," a pretrial detainee may be removed to a

---

[1] Policy CD-143501 and Policy CD-143500 are two policies that are presented as one document by Defendant in Exhibit E attached to his Motion for Summary Judgment. (Doc. 21, Ex. E). Policy CD-143501 appears as a subset of Policy CD-143500 and both are titled "Safekeeping of County Jail Inmates" (Doc. 21, Ex. E (CD-143500, Title; CD-143501, Title). Plaintiff refers to NMCD Policy CD-143500 and Policy CD-143501 together as "Safekeeping Policy" with a parenthetical to denote the specific policy number.

5

state penitentiary, "when, in the opinion of the said district judge, it is advisable that such person or persons shall be removed for any purpose whatsoever." So, a pretrial detainee may be ordered to NMCD for public welfare or to effectuate safe custody of the inmate or for any purpose as stated by the district judge.

15. Plaintiff partially disputes UMF #15. Plaintiff does not dispute that during Plaintiff's pretrial incarceration, Defendant was the RHU unit manager at CNMCF. Plaintiff disputes that Defendant was required to comply with the Safekeeping Policy (CD-143500).

NMCD Policy CD-143500 and CD-143501 ("Safekeeping Policy"):

The purpose of the Safekeeping Policy (CD-143500) is to "set forth procedures and *guidelines* for housing and management of county jail inmates for safekeeping[.]" (Doc. 21, Ex. E (CD-143500, Purpose) (emphasis added)). The Safekeeping Policy (CD-143501) states that when NMCD receives pretrial detainees pursuant to a safekeeping order, NMCD "will segregate the inmate from the general population and place the inmate in [r]estrictive [h]ousing status." (Doc. 21, Ex. E (CD-143501 Procedure.B). It also states that "[c]ounty jail inmates will abide by the policies and procedures of the receiving institution or those governing [r]estricting [h]ousing inmates (*CD-141500*)." (Doc. 21, Ex. E (CD-143501 Procedure.C.) (emphasis in original)).

NMCD Policy CD-141500 ("Restrictive Housing Policy"):

NMCD Policy CD-141500 is titled "Restrictive Housing". (Ex. 1, Title)[2]. The Restrictive Housing Policy is cited within the Safekeeping Policy (CD-143500), but it is not referenced or

---

[2] Plaintiff attaches four exhibits to this response as listed in the Declaration of Todd Bullion: (1) Exhibit 1-NMCD Policy 141500; (2) Exhibit 2-Declaration of Max Ortega III in Support of Plaintiff's Opposition to Defendant Luis Lopez's Motion for Summary Judgment; (3) Exhibit 3- Phaedra Haywood, *Report examines solitary confinement in New Mexico*, Santa Fe New Mexican (Oct. 18, 2019), *available at* https://www.santafenewmexican.com/news/local_news/report-examines-solitary-confinement-in-newmexico/article_72e67e70-db4d-5190-a9d9-709ce51a88e6.html, and (4) Exhibit 4-

cited by Defendant. The Restrictive Housing Policy applies to "all inmates and staff of the [NMCD]." (Ex.1, Applicability). The purpose of the Restrictive Housing Policy is to "[e]stablish *guidelines* to differentiate Restrictive Housing from Special Management." (Ex. 1, Purpose (emphasis added)). The Restrictive Housing Policy states that "[r]estrictive [h]ousing is a temporary placement, *not* a long term program." (Ex, 1, Policy.4, (emphasis in original)). It also states that inmates in "[r]estrictive [h]ousing will receive a minimum of one hour exercise per day outside tier cells, five days per week, unless security or safety considerations dictate otherwise." (Ex.1, Policy.8). Additionally, "[i]nmates will not be placed in [r]estrictive [h]ousing for disciplinary or [p]re [h]earing [d]etention reasons for more than 30 days, per incident." (Ex.1, Policy.1).

The Safekeeping Policy (CD-143500 and CD-143501) and the Restrictive Housing Policy are linked. Collectively, these policies create a minimum set of guidelines regarding conditions of confinement for pretrial detainees. Indeed, Defendant and an assistant to the warden eventually increased Defendant's recreation time ("rec time"). (Def. Response to Pl.'s Interrogatory No. 7).

Because these policies create a guideline, Defendant retained discretion in his treatment of Plaintiff as a pretrial detainee. Accordingly, Defendant was not required to comply with the Safekeeping Policy (CD-143500) as he asserts.

16.  Plaintiff does not dispute UMF #16. The relevance and materiality of UMF #16 is discussed in the Argument section of this response. *See* Argument *infra* Part I.C.

17.  Plaintiff does not dispute UMF #17. The relevance and materiality of UMF #17 is discussed in the Argument section of this response. *See* Argument *infra* Part I.C.

---

Defendant's Response to Interrogatories. These four exhibits are attached to a declaration of Todd Bullion.

18. Plaintiff does not dispute UMF #18. The relevance and materiality of UMF #18 is discussed in the Argument section of this response. *See* Argument *infra* Part I.C.

19. Plaintiff does not dispute UMF #19. The relevance and materiality of UMF #19 is discussed in the Argument section of this response. *See* Argument *infra* Part I.C.

**II. Plaintiff's Statement of Additional Undisputed Material Facts.**

A. In late 2018, Plaintiff was incarcerated in a county jail in Raton, New Mexico, awaiting trial on state charges in the Eighth Judicial District Court. (Ex. 2 at ¶1).

B. In December of 2018, Plaintiff was transferred to CNMCF, a prison operated by NMCD, pursuant to a safekeeping order. (Ex. 2 at ¶2-3).

C. Plaintiff was immediately placed into RHU upon his arrival to CNMCF. (Ex. 2 at ¶4).

D. Plaintiff was housed in RHU from December 21, 2018 through November 6, 2019. (Def. Response to Pl.'s Interrogatory No. 2). He only left RHU for transport to Raton for court hearings. (Ex. 2 at ¶5).

E. Plaintiff was confined in his cell alone in RHU. (Ex. 2 at ¶6). He was confined for twenty-three hours a day during the week, with one hour for of rec time, but he often did not receive any rec time at all during the week. *Id*. He did not have meaningful human contact. *Id*. On the weekends, he was under a twenty-four-hour continual lockdown. *Id.*

F. Plaintiff spoke with Defendant while in RHU, almost daily. (Ex. 2 at ¶7); (Def. Response to Pl.'s Interrogatory No. 7). Defendant told Plaintiff that Plaintiff was being treated badly and he would try to get Plaintiff out of RHU. (Ex. 2 at ¶8).

G. On October 18, 2019, the Santa Fe New Mexican published an article titled "Report examines solitary confinement in New Mexico". (Ex. 3). The article specifically commented on Plaintiff's lengthy solitary confinement. (Ex. 3); (Ex. 2 at ¶9).

Plaintiff requests that the court take judicial notice: (1) that the article was titled "Report examines solitary confinement in New Mexico"; (2) that the article was published on October 18, 2019; (3) that the article reported on Plaintiff's length of incarceration in solitary confinement; and (4) that an official from CNMCF is quoted acknowledging that Plaintiff had been kept in solitary confinement for nearly a year and that "right now they are working to get him out of solitary." (Ex. 3).

Federal Rule of Evidence 201(b) allows a court to take judicial notice "of a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts may take judicial notice of a publication date, and existence of newspaper articles that publicize certain facts. *Se. Clinical Nutrition Centers, Inc. v. Mayo Found. for Med. Educ. & Rsch.*, 135 F. Supp. 3d 1267, 1271 (N.D. Ga. 2013) ("Courts can therefore take judicial notice of a publication date."); *Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (a "court may take judicial notice of the existence of newspaper articles in the Washington, D.C. area that publicized" an ongoing investigation.).

The title, date, and facts reported regarding Plaintiff's incarceration in solitary confinement are not subject to dispute as the article is readily available on the internet for viewing. The article is thereby verifiable with certainty.

To the extent Plaintiff requests that the Court take judicial notice that an NMCD official was "working to get him out of solitary [right now]" that statement is not offered to show the truth of the matter asserted in violation of Federal Rule 802. Fed. R. Evid. 802 ("Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court."). Rather, the statement is offered to show the effect on

9

the listener. *Faulkner v. Super Valu Stores*, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993) ("Statements offered for the effect on the listener ... are generally not hearsay."); *United States v. Cestnik*, 36 F.3d 904, 908 (10th Cir. 1994) ("[A] document that is hearsay when offered to prove its truth will not be excluded under the hearsay rule if offered for some other purpose.").

Here, Plaintiff requests that the Court take judicial notice of the statements from the CNMCF official acknowledging that Plaintiff had been kept in solitary confinement for nearly a year and that they were "working to get him out of solitary" at the time of publication of the article to show the effect on the listener. Indeed, after publication of the article, Plaintiff's conditions of confinement improved because his rec time was increased to two hours because he had "been good." (Ex. 2 at ¶10). Thus, the CNCMF official's statements that Plaintiff had been kept in solitary confinement for nearly a year and that they were "working to get him out of solitary" are not offered for the truth, but rather for the statement's effect on the listener.

H. Within days after the news publication, Plaintiff was told his rec time was being increased to two hours because Plaintiff had "been good." (Ex. 2 at ¶10). Plaintiff was still a pretrial detainee when his rec time was increased to two hours. *Id.* The decision to increase Plaintiff's rec time was made by Defendant and an assistant to the warden. (Def. Response to Pl.'s Interrogatory No. 7).

I. Plaintiff was transported out of CNCMF on November 6, 2019, and did not return to CNCMF as a pretrial detainee. (Def. Response to Pl.'s Interrogatory No. 9).

**ARGUMENT**

**I. WHETHER DEFENDANT VIOLATED PLAINTIFF'S CLEARLY ESTABLISHED RIGHT TO BE FREE FROM PRETRIAL PUNISHMENT IS A DISPUTED QUESTION OF MATERIAL FACT.**

**A. The evidence construed in Plaintiff's favor, establishes that Plaintiff's confinement conditions were not related to any legitimate governmental objective and amounted to punishment.**

Pursuant to *Bell*, conduct that "amounts to punishment can be established on whether [an] 'expressed intent to punish on the part of detention facility officials' exists. … If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective." *Sutton*, 734 F.3d at 1241 (citing to *Bell*, 441 U.S. at 539). Thus, whether a pretrial detainee's conditions of confinement amount to punishment can be established by an expressed intent or by establishing that the pretrial detainee's restrictions were not related to any legitimate governmental objective.

**1. NMCD policies set a floor, not a ceiling, for conditions of confinement to be imposed on pretrial detainees.**

The Safekeeping Policy and Restrictive Housing Policy create a minimum set of guidelines regarding conditions of confinement for pretrial detainees. The purpose of the Safekeeping Policy (CD-143500) is to "set forth procedures and guidelines for the housing and management of county jail inmates for safekeeping[.]" (Doc. 21, Ex. E (CD-143500, Purpose)).  The Safekeeping Policy (CD-143501) states that when NMCD receives pretrial detainees pursuant to a safekeeping order, NMCD "will segregate the inmate from the general population and place the inmate in [r]estrictive [h]ousing status." (Doc. 21, Ex. E (CD-143501, Procedure.B)). It further states that "[c]ounty jail inmates will abide by the policies and procedures of the receiving institution or those governing Restrictive Housing inmates (*CD-141500*)."   (Doc. 21, Ex. E (CD-143501 Procedure.C.)). Importantly, the Safekeeping Policy (CD-143501) lists the Restrictive Housing Policy as its authority. (Doc. 21 Ex. E (CD-143501, Authority)).

The purpose of the Restrictive Housing Policy is to "[e]stablish *guidelines* to differentiate [r]estrictive [h]ousing from [s]pecial [m]anagement." (Ex. 1, Purpose (emphasis added)). It

unequivocally explains that "[r]estrictive [h]ousing is a temporary placement, *not* a long term program." (Ex. 1, Policy.4). Further, it sets a minimum amount of rec time: "[i]nmates in [r]estrictive [h]ousing will receive a minimum of one hour exercise per day…unless security or safety considerations dictate otherwise." (Ex. 1, Policy.8).

Neither the Safekeeping Policy nor Restrictive Housing Policy reference or discuss the use of keeping an inmate in a single cell for twenty-three to twenty-four hours a day, solitary confinement, or dictate that an inmate received pursuant to a safekeeping order must be placed in solitary confinement. (Doc. 21, Ex. E); (Ex. 1); (Pl. Resp. to Def. UMF #15). Instead, when read together, these policies indicate the minimum level of treatment that a pretrial detainee should receive when detained in NMCD pursuant to a safekeeping order.

**2. Defendant's treatment of Plaintiff amounted to punishment.**

In late 2018, Plaintiff was a pretrial detainee incarcerated in CNMCF, a prison operated by NMCD, pursuant to a state district court safekeeping order. (Pl. UMF A, B); (Pl. Resp. to Def. UMF #14). Plaintiff was immediately housed in RHU upon his arrival to CNMCF. (Pl. UMF C). Defendant, as RHU manager at CNMCF, had discretion over what conditions of confinement to impose upon Plaintiff as a pretrial detainee housed pursuant to the safekeeping order. (Pl. Resp. to Def. UMF #15). Defendant opted to treat Plaintiff at the baseline set by NMCD policies, by imposing the maximum restrictions on Plaintiff—almost a year of solitary confinement and one hour of rec time. (Pl. UMF D, E, F). These conditions, and their duration, were worse than those imposed on inmates as punitive sanctions for disciplinary reasons which limited placement in RHU to thirty days per incident. (Ex. 1, Policy.1, 4); (Pl. UMF E). During the lengthy time in which Plaintiff was housed in RHU, Defendant even admitted to Plaintiff that his treatment was unfair. (Pl. UMF F). Defendant's statements to Plaintiff imply that Defendant was aware that Plaintiff's

confinement conditions, including nearly a year of solitary confinement and one hour of rec time, were arbitrary and purposeless.

Defendant had discretion over Plaintiff's conditions of confinement, and although he made representations to Plaintiff that these conditions would improve, they did not until the publicity generated by the news article. (Pl. UMF F, G, H). On October 19, 2019, the Santa Fe New Mexican published an article on the use of solitary confinement at NMCD and discussed Plaintiff's lengthy pretrial incarceration. (Pl. UMF F). Shortly after publication, Plaintiff's restrictions were reduced: his rec time was increased to two hours. (Pl. UMF G). Defendant offers no penological reason that Plaintiff's rec time was increased after publication of the news article, and not months earlier. The lessening of restrictions on Plaintiff supports the inference that no penological purpose was served by housing him in solitary confinement with the minimum amount of rec time. Rather, his continued conditions of confinement imposed by Defendant served as punishment and was unrelated to any penological interest. *See e.g. Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013) (discussing, in relevant part, that "[w]here there is no evidence suggesting what legitimate penological purpose was in play, the court was unable to exclude the possibility that a defendant used force against the plaintiff as punishment which was "enough to preclude granting qualified immunity at summary judgment under *Bell's* plain terms.").

Defendant argues that Plaintiff cannot show "his placement in RHU was expressly intended as a form of punishment" and goes on to argue that safekeeping is "necessary for the public welfare." (Doc. 21 at 10). Plaintiff acknowledges that his initial placement in RHU when he arrived to CNNMF may have been in accordance with the Safekeeping Policy (CD-143500). (Pl. UMF B); (Pl. Resp. to Def. UMF #5). However, his solitary confinement and imposition of the minimum amount of rec time, were not. To the contrary, when Defendant's rec time was increased, it

13

established that Defendant was not mandated to follow the Safekeeping Policy (CD-143500), but rather pursuant to the Restrictive Housing Policy (CD-141500), Defendant maintained discretion over his conditions of confinement. (Pl. UMF H). Nothing in the written Safekeeping Policy required Defendant to house Plaintiff in solitary confinement, with only one hour a day outside his cell, for nearly a year. Indeed, once the public became aware of Plaintiff's conditions of confinement, Defendant improved them. (Pl. UMF H).  This demonstrates that NMCD employees, including Defendant, were not mandated to follow NMCD policies regarding housing and treatment of inmates. Instead, an NMCD employee possesses broad discretion in altering, for better or worse, an inmate's confinement conditions.

Plaintiff has established unconstitutional punishment. His conditions of confinement while in RHU prior to the news publication bore "no reasonable relationship to any legitimate governmental objective" and were quickly altered after publicity generated from the news article. *Sutton*, 734 F.3d 1241. Defendant's ability to adjust Plaintiff's conditions of confinement, and his decision to do so only after Plaintiff's situation became public, establishes that Defendant impermissibly punished Plaintiff.

Defendant argues that implementation of the Safekeeping Policy (CD-143500) was not for punishment purposes, and Plaintiff's confinement in RHU was managerial. (Doc. 21 at 10-11). Defendant conflates the purpose of the Safekeeping Policy (CD-143500) with Plaintiff's housing in RHU and solitary confinement. The purpose of the Safekeeping Policy was to ensure that NMCD would comply with New Mexico State law that mandated NMCD to accept pretrial detainees for safekeeping. (Pl. Resp. to Def. UMF #11). New Mexico state law does not mandate that pretrial detainees be kept in RHU or in solitary confinement. NMSA 1978, Section 33-3-15

14

and Plaintiff's safekeeping order are entirely silent on conditions of confinement. (Doc. 21, Ex. C).

Defendant purports to argue that his placement of Plaintiff in RHU was nondiscretionary and managerial pursuant to the Safekeeping Policy (CD-143500), and therefore, could not amount to punishment. (Doc. 21 at 10-11). Defendant's argument is undercut by Plaintiff's increase in rec time after the publicity generated by the news article. Although Defendant may have been placed in RHU pursuant to the Safekeeping Policy (CD-143500) initially, his conditions of confinement while housed in RHU was tantamount to punishment. Defendant even recognized that Plaintiff was being punished when he told Plaintiff he was being treated unfairly and would work to get him out. (Pl. UMF F).

The record developed up to this point supports the inference that Defendant improved Plaintiff's confinement conditions in response to negative publicity generated by the news article. The change in confinement conditions after publication of the news article was also the logic used by the Court in the Court's Order finding that Plaintiff adequately alleged an inference of punishment while Plaintiff was a pretrial detainee. (Doc. 10 at 9 (stating that "[i]f [Plaintiff] was released from the RHU simply because of the publicity, it lends credence to his argument that his earlier confinement was arbitrary or purposeless" and that Plaintiff "adequately alleged an inference of punishment that, absent a determination of guilt, cannot be imposed in accordance with the due process clause of the fourteenth amendment." (citations omitted)).

In all, Defendant's mistreatment of Plaintiff was discretionary, and not mandated by NMCD policies.  Plaintiff has raised genuine disputes as to material facts regarding his confinement conditions, whether those conditions amounted to punishment, and Defendant's discretionary control over Plaintiff as a pretrial detainee. Summary judgment should be denied.

**B. Plaintiff's right to be free from pretrial punishment was clearly established by the time of his incarceration in RHU.**

Long before Plaintiff's incarceration at CNMCF, the law was clearly established by the United States Supreme Court that any punishment of a pretrial detainee violates his constitutional right:

> [f]or under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest. …Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.

*Bell*, 441 U.S. at 535–37 (citations and quotation marks omitted). The Tenth Circuit recognized that "[b]y [1997] the Supreme Court had held that the Fourteenth Amendment's guarantee of due process prohibits *any* punishment of those awaiting trial" and that "punishment is *never* constitutionally permissible for presumptively innocent individuals awaiting trial." *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013) (citations omitted) (emphasis in original).

Defendant acknowledges that "[t]he Due Process Clause protects a pretrial detainee … from being 'punished prior to an adjudication of guilt in accordance with due process of law." (Doc. 21 at 9). However, he argues that Plaintiff must show that he had a constitutional right to be exempted from the Safekeeping Policy (CD-143500), or to be removed from RHU during his incarceration at CNMCF as a pretrial detainee. (Doc. 21 at 11-12).

Defendant's argument is wrong, and if accepted, would lead to absurd results. First, as already discussed, the Safekeeping Policy (CD-143500) did not require Defendant to subject Plaintiff to nearly a year of solitary confinement. *See* Argument *supra* I.A.1. Second, even if the Safekeeping Policy demanded such treatment, that would not provide Defendant with a legally

16

cognizable excuse for his actions. Defendant's argument equates the Safekeeping Policy with a constitutional right. It is not. To accept Defendant's argument would mean that a correctional facility, or any public entity, can draft policy to circumvent established rights, and therefore never be held liable for constitutional violations. As Defendant concedes, the law prohibits any punishment of a pretrial detainee. That is the constitutional right Defendant violated when Plaintiff was housed in solitary confinement at CNMCF.

Defendant also seemingly argues that Plaintiff must produce a case with identical facts to form a violation of a clearly established right. (Doc. 21 at 11-12). Not so. The question is whether Defendant was on "fair notice" that Plaintiff's confinement conditions while in RHU were unconstitutional, not whether another case exists "with precisely the same facts." *Gilchrist*, 359 F.3d at 1298. Here, Defendant was on fair notice that Plaintiff's restrictions while housed in RHU were unconstitutional. Indeed, Defendant recognized that fact when he told Plaintiff that he was being treated unfairly. (Pl. UMF F, G, H). Later, when Plaintiff's status in RHU was made public, Plaintiff's conditions of confinement improved—he was given more rec time. (Pl. UMF H). These undisputed facts establish that Defendant was on fair notice that Plaintiff's conditions of confinement while in RHU were unconstitutional.

Based on Defendant's qualified immunity claim, Plaintiff bears the burden of establishing that a constitutional right was clearly established when the violation occurred. Plaintiff has done so. Case law is explicit that any punishment of a pretrial detainee violates his constitutional right under the due process clause of the Fourteenth Amendment. Defendant violated that right. The Motion for Summary Judgment should be denied.

### C. Defendant's irrelevant and immaterial UMF should not be considered.

Defendant's UMF #2, #3, #4, #16, #17, #18, and #19 are irrelevant and immaterial to the issue of qualified immunity. In reviewing evidence submitted in a motion for summary judgment, the Court will "simply disregard evidence which is substantively inadmissible." *S.W. v. Geo Grp., Inc.*, No. CV 15-250 KG/JHR, 2019 WL 430870, at *1 (D.N.M. Feb. 4, 2019); *Wilson v. Jara,* 866 F.Supp.2d 1270, 1276–79 (D.N.M.2011) ("Whether this fact is relevant is a legal argument, and the Court …will consider it in its legal analysis."). Pursuant to Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible."

Defendant does not explain how UMF #2, #3, #4, #16, #17, #18, or #19 support any argument regarding qualified immunity. For instance, Defendant fails to put forward any evidence that Plaintiff's placement in solitary confinement was informed by *anything* besides the four corners of the safekeeping order. The safekeeping order makes no factual findings about Plaintiff posing a threat to anyone—it merely parrots the broad language of NMSA 1978, Section 33-3-15. (Pl. Resp. to Def. UMF #14).

UMF #2, #3, #4, #16, #17, #18, and #19 are irrelevant and immaterial to whether Defendant is entitled to qualified immunity. These facts should be disregarded by the Court.

### III.  DEFENDANT'S REQUEST FOR STAY SHOULD BE DENIED.

Defendant requests a stay of discovery. Plaintiff opposes. It is within the Court's discretion whether to issue a discovery stay. *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1386 (10th Cir. 1994) ("As a general rule, discovery rulings are within the broad discretion of the trial court."). However, Defendant bears the burden of establishing the need for a stay. *Clinton v. Jones,* 520 U.S. at 708 ("The proponent of a stay bears the burden of establishing its need."). "In particular, where a movant seeks relief that would delay court proceedings by other litigants he must make a strong

showing of necessity because the relief would severely affect the rights of others." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.,* 713 F.2d 1477, 1484 (10th Cir. 1983). "The underlying principle clearly is that '[t]he right to proceed in court should not be denied except under the most extreme circumstances.'" *Id.* (quoting *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir. 1971)).

Defendant claims he is entitled to a stay because he asserted qualified immunity. (Doc. 21 at 13). In *Cole v. Ruidoso Mun. Sch.,* 43 F.3d 1373 (10th Cir. 1994), "the defendants argue[d] that they had an absolute right to a stay of discovery following the filing of their motion for qualified immunity[.]" In response, the Tenth Circuit held that "when qualified immunity is raised as a defense, there is a narrow right to discovery limited to the issue of qualified immunity." *Id.* 1387.

As detailed in the Motion to Strike filed concurrently with this response, Defendant relies upon unauthenticated documents, the Amended Complaint, and his Answer to create his undisputed facts. Evidence sought by Plaintiff includes evidence that is relevant and material to the issue of qualified immunity. Based on the foregoing, Defendant's request for stay should be denied.

## CONCLUSION

Given the additional material facts and exhibits set forth by Plaintiff, genuine issues of material fact remain. Defendant is not entitled to summary judgment or a stay in discovery. For the above stated reasons, Plaintiff requests that this Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

/s/ Benjamin Gubernick_____
Benjamin Gubernick
Gubernick Law, P.L.L.C.
10720 W. Indian School Rd.

Ste. 19 PMB 12
Phoenix, AZ 85037
623-252-6961
Ben@gubemicklaw.com

/s/ Todd J Bullion
Todd J. Bullion
Law Office of Todd J. Bullion
4811 Hardware DR NE
Bldg D, Ste 5
Albuquerque, NM 87109
(505) 452-7674
todd@bullionlaw.com