IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MAX ORTEGA III,**

    **Plaintiff,**

  v.

                                               **No. CIV 21-0728 RB/JHR**

**WILLIAM EDGMAN, LOUISE LOPEZ,**
**NEW MEXICO CORRECTIONS DEPARTMENT,**
**and DOES (1–50),**

    **Defendants.**

### DECLARATION OF AUTHENTICATION OF PLAINTIFF'S EXHIBITS

I, Todd J. Bullion, declare as follows:

1. I am a licensed attorney in New Mexico and represent Max Ortega in this matter. I have personal knowledge of the facts stated below and would be competent to testify to them in court.

2. Attached as Exhibit 1 are documents produced by Defendant in discovery as initial disclosures Bates labelled NMCD_00040-00041.

3. Attached as Exhibit 2 is a true and correct copy of a declaration provided by Max Ortega made by him under penalty of perjury on July 11, 2022.

4. Attached as Exhibit 3 is a true and correct copy of a news article published by the Santa Fe New Mexican originally published on October 18, 2019 authored by Phaedra Haywood, retrieved from the following URL address on Friday July 29, 2022: https://www.santafenewmexican.com/news/local_news/report-examines-solitary-confinement-in-new-mexico/article_72e67e70-db4d-5190-a9d9-709ce51a88e6.html

5. Attached as Exhibit 4 are Defendant's Responses to Interrogatories in this case.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of July, 2022, at Albuquerque, New Mexico.

/s/ Todd J Bullion
Todd J. Bullion
Law Office of Todd J. Bullion
4811 Hardware DR NE
Bldg D, Ste 5
Albuquerque, NM 87109
(505) 452-7674
todd@bullionlaw.com



**NEW MEXICO CORRECTIONS DEPARTMENT**

"We commit to the safety and well-being of the people of New Mexico by doing the right thing, always."
**C**ourage **R**esponsibility **E**thics **D**edication - **CRED**ibly serving the public safety of New Mexico

| ISSUE DATE: | 07/23/15 | REVIEWED: | 11/30/18 |
| EFFECTIVE DATE: | 07/23/15 | REVISED: | 10/05/17 |

**CD-141500**   TITLE:   **Restrictive Housing**

**AUTHORITY:**

   A. Section 33-1-6 NMSA

**REFERENCES:**

   A. ACA Standards 4-4250, 4-4253, 4-4262 and 4-4270 *Standards for Adult Correctional Institutions, 4th Edition.*

**PURPOSE:**

Establish guidelines to differentiate Restrictive Housing from Special Management.

**APPLICABILITY:**

All inmates and staff of the New Mexico Corrections Department.

**FORMS:**

   A. **Restrictive Housing/PHD Placement Form/Temporary Restrictive Housing** form (*CD-141500.1*)
   B. **7 and 30 Day Review** form (*CD-141500.2*)


**POLICY:**

   1. Inmates will not be placed in Restrictive Housing for disciplinary or Pre Hearing Detention reasons for more than 30 days, per incident.

   2. Inmates placed in temporary Restrictive Housing for the purposes of transfer to another facility will be moved as soon as possible.

   3. Inmates placed in temporary Restrictive Housing for the purposes of placement in Special Management Program require the investigation be completed within 5 days and forwarded to the Special Management Coordinator.

   4. Restrictive Housing is a temporary placement, *not* a long term program.



PLAINTIFF'S EXHIBIT 1

NMCD  00040

5. All Restrictive Housing inmates will require review within 72 hours. **[4-4250]**

6. Inmates placed in Restrictive Housing or protective custody will have a status review completed by the classification committee or other authorized staff group every seven (7) days for the first (2) two months and at least every thirty (30) days thereafter on form CD-141500.2. **[4-4253]**

7. Inmates in Restrictive Housing will have the opportunity to shave and shower at least three times per week. **[4-4262]**

8. Inmates in Restrictive Housing will receive a minimum of one hour exercise per day outside tier cells, five days per week, unless security or safety considerations dictate otherwise. **[4-4270]**

_____                    11/30/18
David Jablonski, Secretary of Corrections                    Date
New Mexico Corrections Department

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MAX ORTEGA III,
    Plaintiff,

v.
                    No. CIV 21-0728 RB/JHR

WILLIAM EDGMAN, LOUISE LOPEZ, NEW
MEXICO CORRECTIONS DEPARTMENT,
and DOES (1–50),

    Defendants.

### DECLARATION OF MAX ORTEGA III IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT LOUIS LOPEZ'S MOTION FOR SUMMARY JUDGMENT

My name is Max Ortega III, I am a person over the age of eighteen, and the named plaintiff in the above-captioned matter. If I were called upon to testify, I could and would testify based on my own personal knowledge as follows:

1. In late 2018 I was incarcerated at a county jail in Raton, New Mexico. At the time, I was a pretrial detainee, awaiting trial on state charges in New Mexico's Eighth Judicial District Court.

2. In December of 2018, I was transferred to the custody of the New Mexico Corrections Department ("NMCD") because the judge signed a safekeeping order.

3. NMCD immediately transported me to the Central New Mexico Correctional Facility ("CNMCF"), a prison under NMCD's management located in Los Lunas, New Mexico.

4. As soon as I arrived at CNMCF, I was placed in the prison's Restrictive Housing Unit ("RHU").

5. I remained at in the RHU from December 2018 through October 2019. I would only leave the RHU when I was transported back to Raton for court hearings.

6. From December 2018 to October 2019, I was confined alone in my cell in the RHU for 23 hours a day during the week, with one hour for "recreational time" where I could walk around and exercise in a confined space outside of my cell, but without meaningful human contact. I was permitted 15 minutes a day during the week to shower outside of my cell. On the weekends, I was under 24 hour continual lockdown.

7. During my time at CNMCF, I interacted occasionally with Louis Lopez, one of the named defendants in this matter. Lopez managed the RHU, and would frequently talk directly with inmates who were incarcerated there.

8. On multiple occasions, Lopez admitted to me that I was being treated badly, and that he would attempt to get me out of RHU. However, as the months went by, I remained incarcerated in solitary confinement in the RHU. To my knowledge, Lopez made no efforts to end my mistreatment.

9. However, On October 18, 2019, the Santa Fe New Mexican ran a story that examined my lengthy incarceration at RHU.

10. Within days after the article's publication, Lopez told me that he was increasing my recreational time to two hours during the week because I had "been good." At that time, I was still a pretrial detainee in NMCD's custody pursuant to a safekeeping order.

11. Several weeks after the article's publication, I was transferred from RHU to general population. At that time , I was still a pretrial detainee in NMCD's custody pursuant to a safekeeping order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.
Executed this 11th day of July, 2022
in Santa Fe County, New Mexico.


PLAINTIFF'S EXHIBIT 2

2

_____
Max Ortega III

https://www.santafenewmexican.com/news/local_news/report-examines-solitary-confinement-in-new-mexico/article_72e67e70-db4d-5190-a9d9-709ce51a88e6.html

# Report examines solitary confinement in New Mexico

By Phaedra Haywood | phaywood@sfnewmexican.com
Oct 18, 2019

Though studies show solitary confinement can have a devastating effect on mental health, New Mexico Corrections Department workers for years have opposed reforms, calling the practice a crucial tool for keeping prisons safe.

But the department's first-ever quarterly report on its use of solitary confinement reveals the top reason inmates were held in solitary during the past three months wasn't because they were a threat to themselves or others.

It was because they were awaiting a hearing.

The second most common reason inmates were confined alone in a cell for at least 22 hours a day was that they were awaiting transfer to another facility.

And while some of these inmates spent just a day or two in isolation, many spent weeks or even months awaiting their next hearing or a transfer.

Max Ortega III, a 47-year-old Raton man being held at the Central New Mexico Correctional Facility in Los Lunas, has been held in solitary confinement awaiting trial since December, the report shows.

Corrections spokesman Eric Harrison said Ortega is not officially a state prisoner but is a Colfax County jail inmate being held under terms of a memorandum of understanding with that county.

Harrison said Ortega has been kept in solitary for nearly a year because his court date keeps getting postponed.

**PLAINTIFF'S EXHIBIT 3**

"In this situation we don't have control over his trial date and the inmate does not have control over his trial date so that is the unfortunate situation there," Harrison said. "It was 'hopefully the trial is soon, the trial is soon,' but at certain point, 10 months later, trial clearly is not soon. It's time to do something."

Harrison said Thursday that Director of Adult Prisons John Gay saw the report, released Wednesday, and "right now they are working to get him out of solitary."

The spokesman said that when it comes to pending transfers, "there are a lot of moving parts." But he said Gay is trying to streamline the transfer process so it happens more quickly.

The report was mandated by a law passed during the 2019 legislative session that restricts the use of solitary confinement for pregnant, juvenile and mentally ill inmates.

It requires all state and county correctional facilities to report the age, gender and ethnicity of each inmate placed or held in solitary during each three-month reporting period, as well as the reasons restricted housing was imposed and the dates when the inmate was put in and taken out of solitary.

While the report meets those requirements, the format in which it has been produced — a listing of each of the 1,160 times solitary was used, arranged alphabetically by the inmate's last name — is so difficult to read that state Rep. Antonio"Moe" Maestas D-Albuquerque, and Andrea Romero, D-Santa Fe, two of the lawmakers who sponsored House Bill 364, initially read it wrong.

"When we brought this legislation forth, we had been told that only 4 percent of the population was subject to [solitary] at any given point in time," Romero said after *The New Mexican* emailed her the document. "Just looking over it without the exact numbers it looks like 15 percent at any given point in time, and that causes alarm."

While the figures in the report indicate the 4 percent figure that Corrections officials cited last year is still the status quo, the fact that the report listed multiple stints in solitary for the same inmate gave the appearance the practice was used on a greater number of inmates.

While Maestas also initially misread the report, he said he's happy to have baseline data from which to start measuring the department's progress toward reducing the use of solitary confinement.

But, he said, "I wish it was more user friendly in terms of easily acquiring stats per prison, per demographic, per reasoning. I think the next report should be an Excel-type spreadsheet so it's more user friendly to analyze the data, so we can answer questions about racial disparities, gender disparities, so we can see if there is an outlier in the system that needs to be remedied."

### By the numbers

The percentage of inmates held in solitary confinement in New Mexico prisons hovers around 4 percent, according to the Corrections Department's first quarterly report required under a new law.

• About 286 of the state's approximately 7,000 inmates were in restrictive housing, defined as 22 hours or more per day alone in a cell.

• The state reported using restrictive housing 1,160 times in the past three months — sometimes multiple times for the same inmate — with the inmates ranging in age from 19 to 78 years old.

### Stated reasons for solitary confinement

The department listed five distinct reasons why an inmate might be placed in solitary confinement. In some instances, more than one reason is cited. The reasons and the frequency with which they were cited are:

• Prehearing detention, 591 times.

• Pending transfer to another facility, 461 times.

• "Threatens the secure and orderly management of the institution and/or is a threat to others or a danger to themselves," 302 times.

• "Disciplinary restrictive housing," 173 times.

• "Under investigation for Predatory Behavior Management Program eligibility," 95 times.

### Ethnic data

The report lists the self-reported ethnicity of each prisoner who was subjected to solitary confinement. When compared to the ethnic makeup of the prison population provided by the department, the report showed:

• About 24 percent of the prison population is "white," and 18 percent of the inmates placed in solitary confinement identified as white.

• About 56 percent of the prison population is "Hispanic white," and 66 percent of inmate placed in solitary confinement identified as Hispanic white.

• About 6 percent of the prison population is "black/African American," and more than 7 percent of inmates placed in solitary confinement identified as black/African American.

• About 6 percent of the prison population is "Native American," and almost 5 percent of inmates placed in solitary confinement identified as Native American.

## Phaedra Haywood

Courts Reporter

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MAX ORTEGA III,**

    **Plaintiff,**

    Case No: 1:21-cv-00728 RB-JHR

**WILLIAM EDGMAN,
LOUISE LOPEZ,
NEW MEXICO CORRECTIONS
DEPARTMENT, and DOES (1-50),**

    **Defendants.**

### DEFENDANT LUIS LOPEZ'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

COMES NOW Defendant Luis Lopez, by and through his counsel of record, Sutin, Thayer & Browne, APC (Mariposa Padilla Sivage and John Stiff Jr.) and for his answers and objections to Plaintiff's First Set of Requests for Production, states as follows:

**INTERROGATORY NO. 1**

State all terms used by you to denote "restrictive housing" from 2018 to present.

**ANSWER:**

As set forth in NMCD policies CD 143500-501, the term used by the NM department of Corrections, and myself to identify when an inmate is segregated from general population is placement in the Restricted Housing Unit or restricted housing.

**INTERROGATORY NO. 2**

Provide all dates and date ranges in which Max Ortega III was in restrictive housing from 2018 to present.



PLAINTIFF'S EXHIBIT 4

**ANSWER:**

Defendant objects to Interrogatory No. 2 on the grounds that it is not s relevant to Plaintiff's claim and is not proportional to the needs of the case. Specifically, Pursuant to Plaintiff's First Amendment Complaint, the only timeframe at issue related to his claims is the period of restricted hosing from December 21, 2018 through November 6, 2019, when Plaintiff was sent on a County hold/safekeeping Order prior to his trial on underlying charges. Notwithstanding and without waiving the foregoing objection, Pursuant to Rule 33(d), see NMCD_00001-00039 previously produced, which is the information related to Plaintiff's restrictive housing related to the allegations in the First Amended Complaint.

**INTERROGATORY NO. 3**

Describe in detail all facts, events, and circumstances supporting Max Ortega III's initial placement in restrictive housing.

**ANSWER:**

Pursuant to Rule 33(d), see NMCD_00039-00141.

**INTERROGATORY NO. 4**

Identify all persons involved in the decision to place Max Ortega III in restrictive housing upon his transfer to the Department of Corrections.

**ANSWER:**

Plaintiff was placed in restrictive housing pursuant to NMCD policies CD-143500-501, which do not allow for placement of County hold inmates anywhere other than restrictive housing. The determination to place him at Central New Mexico Correctional Facility was made by German Franco (*see* NMCD_00053 previously produced). *See also,* NMCD_00049.

**INTERROGATORY NO. 5**

Describe in detail all facts, events, and circumstances supporting Max Ortega III's continued placement in restrictive housing.

**ANSWER:**

Neither Defendant Lopez or NMCD have the ability to house County inmate's outside NMCD policies CD-143500-501, the release of Plaintiff from County hold and restrictive housing is made by the prosecuting county and the Court.  *See* NMCD_00039-00141.

**INTERROGATORY NO. 6**

State the date in October of 2019 that Max Ortega III's "rec time" or "recreation time" was increased to two hours each day.

**ANSWER:**

Defendant Lopez does not recall the date on which Plaintiff's recreational time was increased to two hours per day, but believes it was in the later part of 2019.

**INTERROGATORY NO. 7**

Identify all persons involved in the decision to increase the "rec time" or "recreation time" of Max Ortega III to two hours each day.

**ANSWER:**

Defendant Lopez, with the assistant of then Warden Edgerton, made the decision to increase Plaintiff's recreational time from one hour per day to two hours per day, because it was the only discretionary decision that could have be made by either of them to address the length of his county confinement in restricted housing. Defendant Lopez and Plaintiff spoke almost daily while he was in restricted housing on the County hold.  While Plaintiff never complained to

3

Defendant Lopez about his housing conditions or asked questions about when he would be released from restricted housing, Defendant Lopez felt bad for Plaintiff and his and the department's inability to change Plaintiff's housing and the lack of any movement by the County or Plaintiff's counsel to move his underlying cases and provided the additional recreational time to give Plaintiff more time outdoors each day.  See also NMCD_0001-01562 previously produced.

**INTERROGATORY NO. 8**

Describe in detail all facts, events, and circumstances supporting the increase of Max Ortega III's "rec time" or "recreation time" to two hours each day.

**ANSWER:**

See response to Interrogatory No. 7.

**INTERROGATORY NO. 9**

Describe in detail all facts, events, and circumstances supporting the decision that Max Ortega III be integrated into the general population in 2019.

**ANSWER:**

Defendant Lopez has no personal knowledge or information responsive to Interrogatory No. 9.  Notwithstanding the foregoing, upon information and belief and based on documents reviewed, Plaintiff was not moved to general population in 2019 or at any time while on the County hold under the Order issued on October 29, 2018. See NMCD_00119; see also NMCD_01563-01564 produced herewith.  Plaintiff was in restricted housing per the County hold safekeeping order from December 21, 2018 until he was transported to Court on November 6, 2019, and did not return to any NMCD facility until after his conviction and order of commitment to the Department of Corrections, which was issued on April 13, 2020.  See NMCD_0039;

NMCD_00152; *See also,* Audio of November 7, 2019 hearing and Audio notes in case number D-809-CR-201800069 publically available, and NMCD_01563-01564 produced herewith. The required diagnostic testing and classification was then completed and the determination as to Plaintiff's custodial placement was made thereafter and he returned to corrections on January 21, 2020. *See* NMCD_00041-001562 previously produced. *See also* NMCD_01563-01564 produced herewith and Docket and pleadings filed in Case No. D-809-CR-201800069.

**INTERROGATORY NO. 10**

Identify all persons involved in the decision made to integrate Max Ortega III into the general population in 2019.

**ANSWER:**

*See* Answer to Interrogatory No. 9. *See also* NMCD_00041-001562 previously produced. *See also* NMCD_01563-01564.

**INTERROGATORY NO. 11**

Identify all witnesses, both lay and expert, that you intend to call upon at trial in this matter. For each witness identified, provide a summary of their expected testimony.

**ANSWER:**

Discovery in this matter is early and ongoing and as a result, Defendant Lopez cannot identify all witnesses expected to testify in this matter. Additionally, Defendant has not yet determined testifying expert witnesses and will comply with the Court's scheduling order. Notwithstanding the foregoing, *see* Defendant Lopez's Initial Disclosures and First Supplemental Initial Disclosures previously produced, *see also* NMCD_01563-01654 produced herewith.

DATED: July 21, 2022

                       Respectfully Submitted,

                       SUTIN, THAYER & BROWNE, APC

By: */s/ Mariposa Padilla Sivage*
     Mariposa Padilla Sivage
     John F.S. Stiff Jr.
     P.O. Box 1945
     Albuquerque, NM 87103
     Telephone: (505) 883-3433
     Facsimile: (505) 855-9520
     mps@sutinfirm.com
     jos@sutinfirm.com
     *Attorneys for Defendant Luis Lopez*

6367315.docx