IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MAX ORTEGA III,**

    **Plaintiff,**

v.

                                                            **No. CIV 21-0728 RB/JHR**

**WILLIAM EDGMAN, LOUISE LOPEZ,
NEW MEXICO CORRECTIONS DEPARTMENT,
and DOES (1–50),**

    **Defendants.**

**PLAINTIFF'S RESPONSE TO "DEFENDANT LUIS LOPEZ'S
SUPPLEMENTAL BRIEFING ON MOTION FOR SUMMARY JUDGMENT
AND REQUEST FOR STAY AND MEMORADUM IN SUPPORT THEREOF ON THE
BASIS OF QUALIFIED IMMUNITY"**

Plaintiff Max Ortega III, through undersigned counsel, submit the instant response to "Defendant Luis Lopez's Supplemental Briefing on Motion for Summary Judgment and Request for Stay and Memorandum in Support Thereof on the Basis of Qualified Immunity" (Doc. 52):

## **INTRODUCTION**

The Court's Order for Supplemental Briefing sought additional information on whether the Restrictive Housing Policy applied to Plaintiff. Defendant, in his Motion for Summary Judgment, took the position that the Restrictive Housing Policy does not apply to Plaintiff. Now, Defendant retreats on his position and argues, without authority, that only certain portions of the Restrictive Housing Policy apply to Plaintiff.

As explained below, Defendant's position is inconsistent with NMCD policies. Given the material facts and exhibits set forth in Plaintiff's opposition to Defendant's Motion for Summary Judgment, Plaintiff established that genuine disputes as to material facts exist. Defendant is not entitled to summary judgment.

1

*(1) Whether NMCD Policy CD-141500 applies to county inmates housed at the facility pursuant to a safekeeping order; and (2) the interplay between NMCD Policies CD-143500–143501 (the NMCD Safekeeping Policy) and CD-141500 (the Restrictive Housing Policy), specifically with respect to the mention of CD-141500 within CD-143501 (see Doc. 21-E at 2).*

**A. The Restrictive Housing Policy (CD-141500) applies to pretrial detainees because it is expressly linked with the Safekeeping Policy (CD-143500 and 143501) and, by its plain terms, applies to all inmates in restrictive housing.**

The Safekeeping Policy (CD-143501) states that when NMCD receives pretrial detainees pursuant to a safekeeping order, NMCD "will segregate the inmate from the general population and place the inmate in [r]estrictive [h]ousing status." (Doc. 21, Ex. E (CD-143501 Procedure.B)). In turn, the Safekeeping Policy (CD-143501) incorporates the Restrictive Housing Policy, stating that: "[c]ounty jail inmates will abide by the policies and procedures of the receiving institution or those governing [r]estrictive [h]ousing inmates *(CD-141500)*." (Doc. 21, Ex. E (CD-143501 Procedure.C.) (emphasis in original)).

The Restrictive Housing policy applies to "[a]ll inmates and staff of the New Mexico Corrections Department." (Doc. 35-1 at Pl. Ex. 1, Applicability). It also states that inmates in restrictive housing are entitled to "shave and shower at least three times per week" and have a "minimum of one hour exercise per day…five days per week[.] (Doc. 35-1 at Pl. Ex. 1, 7-8). The conditions of a county jail inmate's confinement listed in the Restrictive Housing Policy are part of the broad "procedures and guidelines for the housing and management of county jail inmates" as required by the Safekeeping Policy. (Doc. 21, Ex. E (CD-143500, Purpose)). This is evidenced by the fact that the Safekeeping Policy references the Restrictive Housing Policy without any specific limitations or exceptions.[1] And, the Restrictive Housing Policy applies to all

---

[1] As pointed out by Defendant, Plaintiff inadvertently and incorrectly stated that the "Safekeeping Policy (CD-143501) lists the Restrictive Housing Policy as its authority. (Doc. 21 Ex. E (CD-143501, Authority))" in its Response to the Motion for Summary Judgment. (Doc. 35 at 11). As discussed above, the Safekeeping Policy (CD-143501) refers to the Restrictive

inmates. Thus, the Safekeeping Policy and Restrictive Housing Policy are meant to be construed together.

The plain language of the Safekeeping Policy (CD-143501) states that county jail inmates, such as Plaintiff, are subject to the Restrictive Housing Policy in the absence of policies and procedures set by the receiving institution. (Doc. 21, Ex. E (CD-143501 Procedure.C.)). Defendant's Motion for Summary Judgment has not proffered any policies or procedures other than the Safekeeping Policy. Thus, the Restrictive Housing Policy applied to Plaintiff.

**B. The Restrictive Housing Policy Applied to Plaintiff because he was classified as an inmate "Pending Transfer to Another Facility" by NMCD.**

Beginning in 2019, the New Mexico Legislature mandated NMCD to produce a quarterly report listing every inmate in restrictive housing and the reason for such placement. NMSA § 33-16-5(A)(1)(a)-(b). In the report revised on August 23, 2019, NMCD submitted that Plaintiff was placed in restrictive housing as an "inmate" who was "pending transfer to another facility"[2]:

CD-141500.4
Revised 8/23/19

**NEW MEXICO CORRECTIONS DEPARTMENT**
**Restrictive Housing Quarterly Report**

| Facility | NMCD # | Name | Age | Gender | Ethnicity | Reason for Placement | Date Placed | Date Released |
|---|---|---|---|---|---|---|---|---|
| CNMCF | 48360 | Ortega, Max | 47 | 1 | 5 | 2 | 12/21/2018 | |

| Reason for Placement: | Ethnicity: | | Gender: |
|---|---|---|---|
| 1=Inmate threatens the secure and orderly management of the Institution and/or is a threat to others or a danger to themselves | 1=Asian<br>2=Black/African American | 6=Native American<br>7=Pacific Islander | 1=male<br>2=female |
| 2=Inmate is pending transfer to another facility<br>3=Inmate is under investigation for PBMP eligibility<br>4=Pre Hearing Detention<br>5=Disciplinary Restrictive Housing | 3=Hispanic Black<br>4=Hispanic Native Indn<br>5=Hispanic White | 8=Unknown<br>9=White | 3=transgender male<br>4=transgender female |

Even Defendant acknowledges that the Restrictive Housing policy applies to inmates who are awaiting transfer to another facility. (Doc. 52 at 1). Thus, NMCD's classification of Plaintiff as an inmate pending transfer to another facility plainly mandated application of the

---

Housing Policy in explaining the procedures followed to receive and manage county jail inmates. (Doc. 21, Ex. E (CD-143501 Procedure.C.)). The position of Plaintiff in its Response to the Motion for Summary Judgment is not altered by Plaintiff's incorrect citation.
[2] Pl. Ex. A (Decl. of Benjamin Gubernick).

Restrictive Housing Policy. Defendant may not take one position with the New Mexico state legislature, and a different one in this Court.

### C. Defendant's arguments are unavailing.

*First*, Defendant argues that the Restrictive Housing Policy did not apply to Plaintiff because it does not reference the Safekeeping Policy. (Doc. 52 1-2). But as discussed, the Restrictive Housing Policy applies to "all inmates." (Doc. 35-1 at Pl. Ex. 1, Applicability). Defendant offers no explanation for how Plaintiff can be excluded from that definition. Similarly, Defendant overlooks Plaintiff's classification as "pending transfer to another facility," a category of inmates to which the Restrictive Housing Policy specifically applies. Further, Defendant's argument ignores that the Safekeeping Policy incorporates the Restrictive Housing Policy by reference. (Doc. 21, Ex. E (CD-143501 Procedure.C.). Lastly, the most recent Restrictive Housing Policy available online, which was revised August 23, 2019, (the "Revised Restrictive Housing Policy") specifically references pretrial detainees. The Revised Restrictive Housing Policy was in effect towards the end of Plaintiff's time in RHU as a pretrial detainee for approximately two months. It lists the definition of "administrative status" to include "[i]nmates pending investigation for trial on a criminal act or pending transfer[.]"[3] Therefore, the terms of the Restrictive Housing Policy and Revised Restrictive Housing Policy applied to Plaintiff while he was housed at NMCD as a pretrial detainee.

*Second*, Defendant's supplemental brief is not internally consistent on whether the Restrictive Housing Policy applied to Plaintiff. Defendant states that "[i]t is CD-143500 and CD-143501-not CD-141500 (the Restrictive Housing Policy)-that apply to the housing and

---

[3] New Mexico Corrections Department, Policy CD-141500 Restrictive Housing, Revised: 08/23/19, Definitions (A) available at https://www.cd.nm.gov/wp-content/uploads/2022/10/CD-141500.pdf.

4

*management of county jail inmates* by NMCD pursuant to a Safekeeping Order." (Doc 52 at 4) (emphasis added). In the same breath, however, Defendant states that "[t]he guidelines in CD-141500 (the Restrictive Housing Policy) are applicable to county jail inmate[s] housed for safekeeping *only with respect to conditions of the inmate's confinement while in RHU*." (Doc. 52 at 6) (emphasis added).

Defendant's position is untenable. If the Restrictive Housing Policy applies to Plaintiff, then that policy was violated by leaving Plaintiff in solitary confinement for nearly a year without review (discussed *infra*). But if the Restrictive Housing Policy did not apply to Plaintiff, his conditions of confinement were entirely at Defendant's discretion.

Defendant attempts to escape this dilemma by offering a third choice: that *only parts* of the Restrictive Housing Policy apply to safekeeping order inmates—more specifically, only those parts that are helpful to Defendant now. But Defendant cites no authority whatsoever for its contention that he can pick and choose which portions of the Restrictive Housing Policy applied to Plaintiff. In addition to being unsupported, Defendant's position also proves too much: if he may simply select which portions of the Restrictive Housing Policy to apply and which to overlook, he certainly maintained discretion over Plaintiff's conditions of confinement and which conditions to impose and modify.

***Third and finally***, Defendant attempts to lay blame on the state court judge who issued the safekeeping order. According to Defendant, that judge controlled the length of Plaintiff's solitary confinement. (Doc. 52 at 2). Yet the safekeeping order required Plaintiff be transported to NMCD "for housing during the pendency of this case pursuant to NMSA 1978 §33-3-15." (Doc. 21, Ex. C). Although the safekeeping order required that Plaintiff be housed by NMCD while his state court case was pending, it did not mandate that Defendant be housed in RHU, did

not reference NMCD policy, restrictive housing, solitary confinement, or confinement conditions. (Doc. 21 Ex. C). Defendant's argument in this regard warrants rejection.

**(3)** *Whether Ortega had any right to periodic reviews of his placement in the RHU pursuant to the Restrictive Housing Policy, and if he did, whether that right was violated as alleged in his Amended Complaint.*

Based on the straightforward reading of the Restrictive Housing Policy and the Revised Restrictive Housing Policy, periodic reviews of Plaintiff's placement in RHU were required in compliance with NMCD's well-settled obligations under federal law. *See, e.g., Romero v. Bd. of Cnty. Commissioners for the Cnty. of Curry*, 202 F. Supp. 3d 1223, 1257 (D.N.M. 2016) (citing *Hewitt v. Helms*, 459 U.S. 460, 477 n. 9 (1983) in support of the proposition that "'[p]rison officials must engage in some sort of periodic review of the confinement' of [pretrial detainees] in segregation"). Plaintiff did not receive any such reviews[4], and Defendant does not allege that Plaintiff received any such reviews in accordance with the policy. Thus, Plaintiff rights were violated.

Defendant asserts that "[n]either the … Safekeeping Policy… nor the… Restrictive Housing Policy provided Plaintiff any right to have periodic review of his placement in RHU[.]" Doc. 52 at 6. Yet the policies say the opposite. The Restrictive Housing Policy and Revised Restrictive Housing Policy apply to "all inmates" and contain requirements about when reviews must occur. *See, e.g.,* Revised Restrictive Housing Policy at 8 ("A hearing *shall* be held to

---

[4] Pl. Ex. B (Decl. of Max Ortega III in Support of Plaintiff's Response to "Defendant's Luis Lopez's Supplemental Briefing on Motion for Summary Judgment and Request for Stay and Memorandum in Support Thereof on the Basis of Qualified Immunity").

review the status of any inmate who spends more than seven (7) continuous days in restrictive housing to determine whether the reasons for the placement still exist." (Emphasis added)).[5]

Here, Defendant agrees that Plaintiff was in RHU and that the Safekeeping Policy applied to Plaintiff. The Safekeeping Policy incorporates the Restrictive Housing Policy, and the Restrictive Housing Policy requires reviews of placement. (Doc. 35-1, Ex. 1, 5-6). Even more, Plaintiff's classification as an inmate housed in RHU for purposes of transfer to another facility would otherwise also require application of the periodic review requirements listed in the Restrictive Housing Policy and the Revised Restrictive Housing Policy. Indeed, for most of the time in which Plaintiff was in RHU, the Restrictive Housing Policy stated that RHU was not a long-term placement. (Doc. 35-1, Ex. 1, 4). In contrast to that mandate, Defendant appears to take the position that Plaintiff could be left in RHU indefinitely.

In total, Plaintiff was entitled to periodic review of his placement in RHU. Defendant's failure to engage in such reviews resulted in Plaintiff's arbitrary detention in RHU. A reasonable jury could find that his treatment amounted to punishment.

## **CONCLUSION**

Based on the foregoing, the Safekeeping Policy and the Restrictive Housing Policy and Revised Restrictive Housing Policy must be construed together. The Restrictive Housing Policy and Revised Restrictive Housing Policy applied to Plaintiff as a pretrial detainee awaiting transfer to another facility, and as an inmate pending investigation for trial on a criminal act. Lastly, because the Restrictive Housing Policy and Revised Restrictive Housing Policy applied to Plaintiff, he was entitled to periodic reviews of his placement.

---

[5] New Mexico Corrections Department, Policy CD-141500 Restrictive Housing, Revised: 08/23/19, pg. 8, available at https://www.cd.nm.gov/wp-content/uploads/2022/10/CD-141500.pdf.

Respectfully submitted,

/s/ Benjamin Gubernick
Benjamin Gubernick
Gubernick Law, P.L.L.C.
10720 W. Indian School Rd.
Ste. 19 PMB 12
Phoenix, AZ 85037
623-252-6961
ben@gubernicklaw.com

/s/ Todd J Bullion
Todd J. Bullion
Law Office of Todd J. Bullion
300 Central Ave SW
Ste. l000E
(505) 452-7674
todd@bullionlaw.com

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of "Plaintiff's response to 'Defendant Luis Lopez's Supplemental Briefing on Motion for Summary Judgment and Request for Stay and Memorandum in Support Thereof on the Basis of Qualified Immunity'" was served, along with a copy of this Certificate of Service, to the following via electronic mail and CM/ECF on this 6th day of January, 2023:

Mariposa Padilla Sivage
Sutin, Thayer & Browne
P.O. Box 1945
Albuquerque, NM 87103
Telephone: (505) 883-3433
mps@sutinfirm.com

Respectfully submitted,
**GUBERNICK LAW P.L.L.C.**
10720 WEST INDIAN SCHOOL RD.
STE 19, PMB 12
PHOENIX, AZ 85037
TEL. 734-678-5169

By /s/ Benjamin Gubernick
BENJAMIN GUBERNICK
New Mexico Bar No. 145006
ben@gubernicklaw.com

8