## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

MAX ORTEGA III,

       Plaintiff,

v.                                                    No. CIV 21-0728 RB/JHR

WILLIAM EDGMAN, LOUISE LOPEZ,[1]
NEW MEXICO CORRECTIONS
DEPARTMENT, and DOES (1–50),

       Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

This lawsuit concerns the conditions of confinement of Max Ortega III, who was held in the Restrictive Housing Unit (RHU or solitary confinement) of the New Mexico Corrections Department (NMCD) for almost a year pursuant to a "Safekeeping Order." Ortega's sole remaining claim involves an alleged violation of his procedural due process rights on the basis that RHU manager Luis Lopez failed to offer him periodic reviews during his confinement. The Court previously found that Ortega demonstrated a genuine dispute of fact on the issue of whether he had a right to periodic reviews and denied Lopez's motion for summary judgment. Lopez now moves the Court to reconsider that ruling. For the reasons that follow, the Court grants the motion to reconsider and finds Lopez is entitled to summary judgment on this claim.

**I.     The Court will reconsider its Opinion under Rule 54(b).**

    **A.     Standards for Motions to Reconsider**

Lopez asks the Court to reconsider its ruling pursuant to Federal Rule of Civil Procedure 59(e). (Doc. 57 at 2.) Rule 59(e), however, applies to motions filed after judgment has been entered

---

[1] Defendants have clarified that Luis Lopez was misnamed in the Amended Complaint as "Louise Lopez." (Doc. 2 at 1.)

and does not provide a basis for the relief Lopez seeks. *See Anderson Living Tr. v. WPX Energy Prod., LLC*, 312 F.R.D. 620, 642 (D.N.M. 2015) (discussing three categories of motions to reconsider); *accord Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005). Because the "Court's . . . summary judgment ruling was not a final judgment[,]" the motion to reconsider "is considered 'an interlocutory motion invoking the [Court's] general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.'" *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008) (quotation omitted). Such authority stems from Federal Rule of Civil Procedure 54(b). *See Price*, 420 F.3d at 1167 n.9.

"Rule 54(b) provides that a district court can freely reconsider its prior rulings." *Med Flight Air Ambulance, Inc. v. MGM Resorts Int'l*, No. 17-CV-0246 WJ/KRS, 2018 WL 1997292, at *5 (D.N.M. Apr. 27, 2018) (citing *Lujan v. City of Santa Fe*, 122 F. Supp. 3d 1215, 1238 (D.N.M. 2015)). "In addition, the rule 'puts no limit or governing standard [on] the district court's ability to do so, other than that it must do so before the entry of judgment.'" *Id.* (quoting *Lujan*, 122 F. Supp. at 1238 (quotation marks omitted)). The Tenth Circuit has stated that a district court "*may* look to the standard used to review a motion made pursuant to . . . Rule 59(e)[,]" *Ankeney v. Zavaras*, 524 F. App'x 454, 458 (10th Cir. 2013) (emphasis added), but it "has not cabined district courts' discretion beyond what [R]ule 54(b) provides[,]" *Lujan*, 122 F. Supp. at 1238 (citing *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007)). Thus, in revisiting a previous order in *Med Flight Air Ambulance*, United States Chief District Judge William P. Johnson was "guided by concerns of judicial economy, avoiding piecemeal litigation, and the posture of all the parties involved." *See* 2018 WL 1997292, at *6. And in *Lujan*, United States District Judge James O. Browning considered (1) "how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenge[d]"; (2) "the case's overall progress and

2

posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence the parties . . . produce[d]"; and (3) the grounds courts use to consider a motion to reconsider brought under Rule 59(e). 122 F. Supp. 3d at 1238–39; *see also Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "Grounds for granting a motion to reconsider pursuant to Rule 59(e) include: '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Ankeney*, 524 F. App'x at 458 (quoting *Servants of the Paraclete*, 204 F.3d at 1012).

**B.      Reconsideration is appropriate for reasons of judicial economy and to thoroughly address the claim in light of all relevant evidence.**

Lopez asserts that the Court misapprehended the relevant factual issue: Ortega's classification as an inmate and whether the Restrictive Housing Policy applied to him during his confinement. (Doc. 57 at 4.) He contends that because the Court misapprehended the facts, reconsideration is necessary to correct clear error and/or to prevent manifest injustice. (*Id.*) The problem was not so much the Court's understanding of the facts as it was that the Court was not given a complete picture of the relevant evidence at the time it issued its Opinion.

Lopez and Ortega agree that all evidence submitted in this matter was "available" to both parties at the time of the parties' original and supplemental briefs on Lopez's summary judgment motion. (*See* Docs. 57 at 3; 59 at 6; 60 at 3.) Lopez complains, though, that he "was not provided an opportunity to reply to [Ortega's] supplemental brief[,]" and thus was denied the chance to submit evidence in response. (Doc. 57 at 4.) Yet Local Rule 7.4 provides that a party may file a surreply with leave of the Court. D.N.M. LR-Civ. 7.4(b). Lopez did not seek leave to file a surreply. The Court will *always* prefer that counsel seek leave to file a surreply rather than allow the Court to expend time and energy ruling on what counsel considers to be incomplete information, only to file a motion to reconsider after the fact.

3

Even without a surreply, Lopez missed his chance to submit evidence in the first instance. Although Ortega clearly asserted a procedural due process claim (*see* Doc. 56 at 10 (citing Am. Compl. ¶¶ 31–33, 38, 63–64, 109; Doc. 5 at 2–3, 11–12)), *neither* party adequately briefed the issue of NMCD's alleged failure to afford Ortega periodic reviews in the original briefs (*see id.*). Nor did Lopez include evidence in response to the Court's order for supplemental briefing. (*See* Doc. 54.) Ortega notes this shortcoming and argues that "Lopez presents no new controlling authority or newly available evidence" and "fails to establish clear error or manifest injustice" under Rule 59(e). (Doc. 59 at 5.)

As the Court explains below, however, had Lopez presented this evidence in his original motion, the Court would have granted summary judgment in his favor. Were the Court to deny Lopez's motion to reconsider solely because it is based on evidence "previously available," the result would be a waste of judicial resources and the time and energy of all involved as the Court finds that no reasonable factfinder could return a decision in Ortega's favor on his procedural due process claim. The Court declines to doggedly adhere to the Rule 59(e) standard to such an end. Consequently, the undersigned finds it is appropriate under Rule 54(b) to reexamine Ortega's procedural due process claim in light of the evidence Lopez attaches to his motion to reconsider.

## II.    Analysis

### A.    Relevant Factual History[2]

#### 1.    Ortega's confinement in the RHU

In October 2018, Ortega was a pretrial detainee in the Colfax County Detention Center awaiting trial on state felony charges. (Docs. 1-3 (Am. Compl.) ¶ 28; 35-2 ¶ 1.) On October 18, 2018, after allegations that Ortega was involved in an altercation with another inmate, the deputy

---

[2] The Court recites the relevant factual background from its earlier Opinion as supplemented with the newly attached evidence.

district attorney filed a motion in state district court seeking review of Ortega's conditions of release.[3] (Doc. 21-B.) On October 29, 2018, the state court entered an Order Granting the State's Motion to Review Conditions of Release and Transfer of Prisoner to the Penitentiary (the Safekeeping Order). (Doc. 21-C.) The court ordered that Ortega be moved "to the Department of Corrections for housing during the pendency of this case pursuant to [N.M. Stat. Ann.] § 33-3-15" in the interest of "the public welfare and [/] or the safe custody of the defendant." (*Id.*) This statute provides in part:

> Whenever the public welfare or the safe custody of a prisoner shall require, any district judge in the state of New Mexico in his discretion may order any person charged with the commission of a crime, or any person in the custody of the sheriff of any county in the district of the said judge, to be removed to another county jail, or to the state penitentiary, or to any other place of safety, when, in the opinion of the said district judge, it is advisable that such person or persons shall be removed for any purpose whatsoever.

N.M. Stat. Ann. § 33-3-15.

Ortega was transferred to the Central New Mexico Correctional Facility (CNMCF) on December 21, 2018, pursuant to the Safekeeping Order. (*See* Am. Compl. ¶ 30; Docs. 35-2 ¶¶ 2–3; 35-4 at 2.) Upon his arrival, Ortega was placed in the RHU in accordance with NMCD Policy CD-143500–143501, entitled Safekeeping of County Jail Inmates (the Safekeeping Policy). (*See* Am. Compl. ¶ 63; Docs. 21 at 4 ¶ 9; 35 at 4 ¶ 9; 35-2 ¶ 4.) Lopez was the RHU Manager during Ortega's confinement. (Am. Compl. ¶¶ 4, 9; *see also* Doc. 21-E.)

Ortega's trial was originally scheduled for September 24, 2018, but it was postponed twice: first to November 25, 2019, and then to December 9, 2019. (*See* Docs. 21-H; 21-J; 21-L.) On August 5, 2019, Lopez emailed Colfax County Sheriff Leonard Baca, Jr. and said: "Max Ortega has been in our custody since 12/18. Can you let me know when you will be taking him back to

---

[3] The Court takes notice of the motion without accepting the truth of the allegations therein. (*See* Doc. 56 at 8–9.)

your facility[?]" (*See* Doc. 44-1 at 3.) On August 6, 2019, Lopez was forwarded information from

Colfax County District Attorney Consuelo Garcia in response to his email. (*See id.* at 2–3.) Garcia

stated that they did "not have a trial date for any of Max Ortega's cases[ and h]e will be held in

[the Department of Corrections] until the cases are resolved by plea/trial or he is convicted and

sentenced to prison." (*Id.* at 3.)

In 2019, the New Mexico Legislature enacted the Restricted Housing Act, which requires

correctional facilities to produce "a report every three months documenting how many individuals

were placed in restricted housing and the reasons for the placement." *See* Carson Thornton

González, *A Deliberate Difference?: The Rights of Incarcerated Individuals Under the New

Mexico State Constitution*, 52 N.M. L. Rev. 548, 571–72 (2022) (citing N.M. Stat. Ann. § 33-16-

5 (2019)). The August 23, 2019 report produced pursuant to § 33-16-5 identified the reason for

Ortega's placement in restrictive housing under category "2," or "pending transfer to another

facility."[4] (*See* Doc. 54-A; *see also* Doc. 1-3 ¶¶ 35–37.)

In October 2019, the Santa Fe New Mexican newspaper ran an article that discussed the

NMCD's "first-ever quarterly report on its use of solitary confinement[,]" which included

information on the "reason inmates were held in solitary . . . ." Phaedra Haywood, *Report examines

solitary confinement in New Mexico*, Santa Fe New Mexico (Oct. 23, 2019), available at https://

www.taosnews.com/news/crime/report-examines-solitary-confinement-in-new-mexico/article_

edb6c637-53c4-5dfc-81ea-4bb73653ab26.html. The article reported that Ortega had been held in

solitary confinement awaiting trial since December 2018. (*Id.*) According to Eric Harrison, an

NMCD spokesman, "Ortega has been kept in solitary for nearly a year because his court date keeps

---

[4] The August 2019 report listed five possible reasons for placement in the RHU: (1) "Inmate threatens the secure and orderly management of the Institution and/or is a threat to others or a danger to themselves"; (2) "Inmate is pending transfer to another facility"; (3) "Inmate is under investigation for PBMP eligibility"; (4) "Pre Hearing Detention"; (5) "Disciplinary Restrictive Housing." (See Doc. 52-A.)

getting postponed[,]" which he asserted was not in either NMCD's or Ortega's control. *Id.* Harrison is quoted as stating that the Director of Adult Prisons saw the report and "right now they are working to get [Ortega] out of solitary." *Id.*

"Within days after the article's publication, Lopez told [Ortega] he was increasing [Ortega's] recreational time to two hours during the week because [he] had 'been good.'" (Doc. 35-2 ¶ 10.) Lopez and an assistant to the warden made the decision to increase Ortega's recreational time. (*See* Doc. 35-4 at 3.) Ortega remained in the RHU until November 6, 2019, when he was transported to court for trial. (*See* Doc. 35-4 at 4.)

The December 31, 2019 NMCD report produced pursuant to § 33-16-5 identified the reason for Ortega's placement in a new category: "County Jail Hold." (*See* Doc. 57-B.) This classification is consistent with the CNMCF, RDC/ID Intake Screening Form dated December 11, 2018, which lists Ortega's status as "Cj Hold." (*See* Doc. 57-C.) Hope Salazar, NMCD's Classification Bureau Chief, avers that Ortega's classification as category "2" on the August 2019 report "is an error." (Doc. 57-D ¶¶ 6–7.) She states that while Ortega was in NMCD custody pursuant to the Safekeeping Order, he was never classified as an inmate being held for purposes of transfer to another facility because he was ineligible for transfer. (*See id.* ¶¶ 8–9.) "County Jail Holds are not eligible to be transferred to other prison facilities, as they have not been sentenced to serve a prison term at any facility as an inmate of NMCD." (*Id.* ¶ 9.)

### 2.     The Safekeeping and Restrictive Housing Policies

There are two NMCD policies at issue in this lawsuit: the Safekeeping Policy, CD-143500–143501, and the Restrictive Housing Policy, CD-141500. The parties agree that Ortega was placed in the RHU pursuant to the Safekeeping Policy. It provides in relevant part:

> Purpose: To set forth procedures and guidelines for the housing and management
> of county jail inmates for safekeeping in institutions designated by the New Mexico

Corrections Department for the confinement of adult criminal offenders.

Applicability: All employees of adult institutions of the New Mexico Corrections Department. . . .

A. NMCD will receive only those county jail inmates whose placement in an institution has been ordered by a district judge. . . .

B. The institution receiving the inmate for safekeeping will segregate the inmate from the general population and place the inmate in Restrictive Housing status. . . .

C. County jail inmates will abide by the policies and procedures of the receiving institution or those governing Restrictive Housing inmates (*CD-141500*).

(Doc. 21-E at 1–2.)

The parties disagree about the extent to which the Restrictive Housing Policy applies to

Ortega's placement in the RHU. The Restrictive Housing Policy provides in relevant part:

Applicability: All inmates and staff of the New Mexico Corrections Department. . . .

1. Inmates will not be placed in Restrictive Housing for disciplinary or Pre Hearing Detention reasons for more than 30 days, per incident.

2. Inmates placed in temporary Restrictive Housing for the purposes of transfer to another facility will be moved as soon as possible. . . .

4. Restrictive Housing is a temporary placement, *not* a long term program.

5. All Restrictive Housing inmates will require review within 72 hours.

6. Inmates placed in Restrictive Housing or protective custody will have a status review completed by the classification committee or other authorized staff group every seven (7) days for the first (2) two months and at least every thirty (30) days thereafter. . . .

7. Inmates in Restrictive Housing will have the opportunity to shave and shower at least three times per week.

8. Inmates in Restrictive Housing will receive a minimum of one hour exercise per day outside tier cells, five days per week, unless security or safety considerations dictate otherwise.

(Doc. 35-1 at 1–2.)

8

Salazar avers that "[t]he right to periodic reviews under NMCD's RHU Policy does not apply to County Jail Holds." (Doc. 57-D ¶ 10.)

## B.    Motions for Summary Judgment

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Halley v. Huckab*y, 902 F.3d 1136, 1143 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1347 (2019) (citing *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id*. "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Tanner v. San Juan Cnty. Sheriff's Off.*, 864 F. Supp. 2d 1090, 1106 (D.N.M. 2012) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991)) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Id*. (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256). A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Id*. at 1107 (quotation and citation omitted). Instead, the non-moving party must come forward with "sufficient evidence on which the factfinder could reasonably find" in their favor. *Id*. (citations omitted). Evidence that is "merely colorable," *Anderson*, 477 U.S. at 249, or consists only of "[u]nsubstantiated allegations[,]" *McCoy*, 887 F.3d at 1044, is insufficient.

## C.    Ortega fails to establish a genuine factual dispute as to whether he was entitled to periodic reviews under the Restrictive Housing Policy.

Ortega contends that he had a right to periodic reviews of his placement in the RHU

pursuant to the Restrictive Housing Policy. (Am. Compl. ¶¶ 3, 31–33, 108; Docs. 54; 56 at 10.) The Restrictive Housing Policy affords inmates in the RHU "status reviews every seven days for the first two months and then every 30 days thereafter." (*See* Doc. 56 at 10 (citing Doc. 35-1 at 4).) The parties agree that the Restrictive Housing Policy affords periodic reviews to inmates held at NMCD for purposes of transfer to another facility. (*See, e.g.*, Docs. 52 at 1; 54 at 3.) They part ways on how Ortega was classified and on whether he was entitled to periodic reviews.

Lopez argues that Ortega was classified as a County Jail Hold, a status that does not entitle an inmate to periodic reviews. (*See* Doc. 57 at 5–6.) Ortega's confinement is bookended by the December 2018 intake form and the December 2019 NMCD report to the legislature, both of which classify him as a County Jail Hold.[5] (*See* Docs. 57-B–C.) Ortega does not dispute the validity of these documents. (*See, e.g.*, Doc. 59 at 9.) Instead, he offers the August 2019 report to the legislature, which contradicts these two documents and classifies Ortega as an inmate "pending transfer." (*See id.*; Doc. 54-A.) Lopez provides evidence to show that the August 2019 classification was error. (*See* Doc. 57-D ¶¶ 6–7.) If these three documents were the only evidence before the Court, the undersigned might agree that Ortega had demonstrated a genuine issue of fact sufficient to preclude summary judgment. They are not.

Salazar's testimony provides undisputed evidence that Ortega was not entitled to periodic reviews under the Restrictive Housing Policy. To begin, Salazar goes beyond merely asserting that the classification contained in the August 2019 report was error; she explains *why* Ortega could not have been "pending transfer" to another facility. (Doc. 57-D ¶¶ 7–9.) As a county inmate who had not yet been sentenced to a prison term at an NMCD facility, Ortega was *ineligible* for transfer

---

[5] Lopez also points to the NMCD Receipt of State Prisoner form, which bears a handwritten note that appears to read "CJ Hold." (Doc. 57 at 5 (citing Doc. 21-D).) As Ortega points out, however, the handwriting is not entirely legible. (*See* Doc. 59 at 9.) Ortega also notes that the relevant documents fail to define or explain the term CJ Hold. (*Id.* at 9.) The Court finds that the meaning may be discerned from the context of the case.

to other prison facilities. (*Id.* ¶ 9.) Ortega does not come forward with evidence to dispute this assertion. (*See* Doc. 59.) Further, Salazar provides critical testimony to support a finding that the provision of the Restrictive Housing Policy regarding periodic reviews does not apply to inmates on a County Jail Hold. (Doc. 57-D ¶ 10.) The lack of such evidence was key to the Court's decision denying Lopez summary judgment the first time around. (*See* Doc. 56 at 11–12.) As Ortega offers no evidence to dispute Salazar's testimony, the Court finds no genuine dispute of fact on the issue.

In sum, Ortega fails to submit "sufficient evidence on which the factfinder could reasonably find" that he was eligible for periodic reviews under the Restrictive Housing Policy as a county jail inmate. *See Tanner*, 864 F. Supp. 2d at 1106 (citations omitted). After considering all evidence on this claim, and being mindful of the interest of judicial economy, the Court finds that reconsideration is warranted and summary judgment should be granted in favor of Lopez.

**THEREFORE,**

**IT IS ORDERED** that Lopez's Motion for Partial Reconsideration of Amended Memorandum Opinion and Order is **GRANTED**;

**IT IS FURTHER ORDERED** that Lopez's Motion for Summary Judgment on the procedural due process claim is **GRANTED** and this lawsuit is dismissed with prejudice.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE